SOLOMON BROWN vs. THEODORE B. SMART, JOSEPH
H. PATTERSON and WILMOT B. RICE, trading as
SMART, PATTERSON and RICE.

*Insolvent law—Article 48, section 13, of the Code—Deed of
Assignment—Preferences—Non-resident Creditors—Juris-
diction—Effect of Adjudication of Insolvency—Judgment
in Rem—Foreign Creditors.*

By section 13, of article 48 of the Code as re-enacted by the Act
of 1886, sec. 298, it is provided, "That no deed or conveyance
executed, or lien created, by any banker, stock-broker, merchant,
manufacturer or trader, being insolvent, or in contemplation of
insolvency, shall be lawful or valid if the same shall contain any
preferences, save such as result from operation of law, and save
those for the wages or salaries to clerks, servants and employés
contracted not more than three months anterior to the execution
thereof, and all preferences, with the exceptions aforesaid, shall
be void, howsoever the same may be made; provided the grantor
or party creating said lien or preference shall be proceeded
against, under section twenty-four, or shall apply for the benefit
of this Act under section one, within four months after the re-
cording of the deed or conveyance, or the creation of said lien or
preference, and shall be declared, or shall become, under the pro-
visions of this Act, an insolvent." On the 30th of November,
1887, a merchant trader residing and doing business in the City of
Baltimore, executed and delivered to a citizen of the State of
Virginia a deed of trust of all his property for the benefit of his
creditors, reciting his own insolvency, and giving preferences to
certain non-resident creditors. On a petition filed on the 8th of
December, 1887, by other non-resident creditors, an order was
passed by which said grantor was adjudicated an involuntary in-
solvent. On appeal from said order it was HELD:

1st. That said non-resident petitioning creditors, had full right
to file the petition, and to ask to have the debtor declared an in-
solvent.

2nd. That the deed of assignment was not protected from the
operation of the State insolvent law, by reason of the preferences

Brown *vs.* Smart, *et al.*

therein given being in favor of creditors residing in another State.

3rd.   That as the Court had jurisdiction over the insolvent debtor himself, and the property assigned was situated in this State, and the deed of assignment was made here, the Court below had jurisdiction to pass the order appealed from.

4th.   That as the insolvency of the debtor, and the illegal preferences to the creditors were apparent upon the face of the deed, the deed was made void *ipso facto et constructione legis*, and in no way depended upon any express declaration of the Court apart from the adjudication of the debtor to be an insolvent.

5th.   That the adjudication was *in rem*, and with all its direct legal incidents and consequences, bound every one, unless shown to have been procured by fraud or collusion.

6th.   That the fact, that the foreign creditors were not served with process, and could not have been compelled to become parties to the insolvent proceedings even if they had been served, could not be assigned as error in the order of the Court below.

7th.   That said order was not objectionable because it declared in terms the deed of assignment to be void; that being the legal result of the adjudication of insolvency founded thereon, as declared by the statute.

APPEAL from the Court of Common Pleas.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., STONE, MILLER, ROBINSON, BRYAN, and McSHERRY, J.

*Thomas W. Hall,* for the appellant.

The jurisdiction of the Insolvent Court in Maryland is entirely statutory, and must be made to appear by proper averments, and if the jurisdictional facts be denied, they must be proved. *Schiff vs. Solomon,* 57 *Md.,* 572.

It is the settled law of this State, that its insolvent laws do not affect contracts made with the citizens of

other States. The decision in *Larrabee vs. Talbott,* 5 *Gill,* 426, is overruled by that of *Pinckney vs. Lanahan,* 62 *Md.,* 448, it is true, but it is not overruled as to the matter actually decided. The question in *Larrabee vs. Talbott,* was whether an assignment of goods made by a Maryland debtor to a New York creditor, made when the debtor was in contemplation of insolvency, and afterwards applying for the benefit of the insolvent law, was valid? The Court held that it was valid, but went further and decided what was not before it, that a foreign creditor could attach the money in the hands of a trustee in insolvency.

This part of the decision was an *obiter dictum,* as the point decided was not involved in the case, but it continued to be received as law, until the decision in the case of *Pinckney vs. Lanahan.* But the real point decided in *Larrabee vs. Talbott,* has never been overruled. On the contrary, in the case of *Pinckney vs. Lanahan,* the Court reiterates the law as declared in *Larrabee vs. Talbott,* that the insolvent laws do not apply to contracts between citizens of different States.

There is no law of Maryland that forbids preferences, except the insolvent law. And in this case the preference arises from a contract between a citizen of Maryland and citizens of other States, which it cannot be denied, is not subject to the operation of our insolvent laws. It cannot be discharged by those laws. *Baldwin vs. Hall,* 1 *Wal.,* 223; *Same vs. Newbury Bank,* 1 *Wal.,* 234; *Pinckney vs. Lanahan,* 62 *Md.,* 448.

It is repugnant to the first principles of English and American law, for a Court to pass judgment on the rights of a person not made subject to its jurisdiction. No law can authorize such a thing. *Pennoyer vs. Neff,* 95 *U. S.,* 714.

The Supreme Court of the United States have settled the law that the District Courts, sitting as Courts in

Brown *vs.* Smart, *et al.*

bankruptcy, have no power to vacate deeds that may be acts of bankruptcy. *Marshall vs. Knox*, 16 *Wallace*, 551; *Smith vs. Mason*, 14 *Wallace*, 419, 432–3; *Bank of Tennessee vs. Horn*, 17 *Howard*, 157; *Towne, et al. vs. Smith*, 1 *Woodb. & Minot*, 115; *Perry Manufacturing Company vs. Brown, et al.*, 2 *Woodb. & Minot*, 449; *Vide White, Trustee vs. Betts Co.*, 61 *Md.*, 120; *Gable & Rusk vs. Scott*, 56 *Md.*, 185.

*Charles Marshall*, for the appellant, filed a brief by leave of the Court.

*Charles A. Boston*, and *Charles Poe*, for the appellees,
Referred to the case of *Wolfsheimer vs. Rivinus and Langford*, 64 *Md.*, 230.

*M. R. Waller*, for the appellees, submitted the following additional authorities:
*Torrens vs. Hammond*, 4 *Hughes*, 596; *Witters vs. Sowles, et al.*, 32 *Fed. Rep.*, 758; *Knower vs. Haines*, 31 *Fed. Rep.*, 513; *Green vs. Van Buskirk*, 5 *Wal.*, 312; *Coward vs. Dillinger & Stevenson*, 56 *Md.*, 59.

ALVEY, C. J., delivered the opinion of the Court.

This is an appeal by an insolvent debtor from an order of the Court below adjudicating him an involuntary insolvent, under the provisions of the insolvent law of this State, as enacted by the Act of the General Assembly of 1886, ch. 298, and incorporated into Article 48 of the Code as part thereof. It is section 13 of the Article just mentioned that is material to the determination of this case. By that section it is provided, that "No deed or conveyance executed, or lien created, by any banker, stock-broker, merchant, manufacturer or trader, being insolvent, or in contemplation of insolvency, shall be lawful or valid *if the same shall con-*

*tain any preferences*, save such as result from operation of law, and save those for the wages or salaries to clerks, servants and employés contracted not more than three months anterior to the execution thereof, *and all preferences*, with the exceptions aforesaid, *shall be void, however. the same may be made;* provided, the grantor or party creating said lien or preference shall be proceeded against under section twenty-four, or shall apply for the benefit of this Act under section one, within four months after the recording of the deed or conveyance, or the creation of said lien or preference, and shall be declared, or shall become, under the provisions of this Act, an insolvent."

The petitioners upon whose petition the debtor was adjudicated an insolvent, are conceded to be creditors of the insolvent, and are citizens of the State of New York. It is also conceded that the insolvent was, at the time of committing the act of insolvency charged, a merchant trader doing business in the City of Baltimore. The petition makes all the necessary allegations of fact to bring the parties within the terms of the statute. The petition was filed on the 8th of December, 1887, and it charges that the debtor, on the 30th of November, 1887, being then insolvent, or in contemplation of insolvency, executed and delivered to a certain Isaac Eichberg, of the State of Virginia, a deed of trust of *all* his property, of every kind and description, for the pretended benefit of all his creditors, but, by reason of undue preferences given to certain creditors. named in the deed, the assignment was in reality for their benefit only, and not for the benefit of creditors generally. The petition charges that the preferences thus given are in violation of the insolvent law of the State, and constituted an act of insolvency, according to the express terms of the statute. The creditors whose claims are preferred by the deed, are all non-residents

of this State, and are citizens of other States of the Union. The deed was made and recorded in this State, and the property intended to be transferred by it is situated here;—consisting principally of a stock of goods and merchandise in store in the City of Baltimore, together with all the debts, accounts, and *choses in action* of every kind, belonging to the debtor. The deed of assignment is exhibited with the petition, and upon its face the fact is recited that the debtor was insolvent; that he was indebted to an amount that exceeded his means to pay his creditors in full, and he therefore made the assignment, giving the preferences referred to in the petition.

The petition prayed for subpœnas against the debtor, the trustee, and the preferred creditors named in the deed of assignment, that they might answer; but none but the debtor was served, and he alone appeared and entered a demurrer to the petition. The demurrer was overruled, and he then answered. By his answer, he admits that he was a merchant, and the petitioners were his creditors, as alleged. He also admits the making of the deed of assignment, but he denies that such deed contains any illegal or forbidden preferences; and he then proceeds to state the grounds of his defence to the petition thus:

1. "He alleges that the persons named as preferred creditors in said deed of trust, all reside out of the State of Maryland, and were creditors of this respondent upon contracts made and to be performed out of the State of Maryland, and that each and every one of said creditors named in said deed agreed with this respondent at the time of the execution of said deed, to accept the provisions of said deed made for each of said creditors, in full satisfaction of their respective claims against him, and did, in consideration of said deed and the provisions therein contained as to each of said

creditors, release this respondent from all further obligation to each of said creditors, and elect to take the benefit of said deed in full discharge and satisfaction of said claims, and each of them.

2. "He denies that this Court has any jurisdiction to decide upon the validity and effect of said deed of trust, and especially does he deny that such an adjudication can be made in any Court which has not acquired jurisdiction over the persons named in said deed of trust, either directly or by representation through the trustee; and he avers that neither the trustee named in said deed, nor any of the creditors secured thereby, have been served with process, or otherwise been made parties to this proceeding, even if it would in any case be competent for this Court to exercise jurisdiction on said petition to declare the deed of trust void, which this respondent denies.   And he respectfully claims the benefit of this answer to so much of the petition as prays that the said deed may be declared void, as if the same objection had been formally taken by plea to the jurisdiction, or by demurrer."

Upon hearing, the Court passed the order of the 21st of March, 1888, adjudicating and declaring the debtor to be an insolvent, and declaring the deed of assignment void, in accordance with the prayer of the petition. It is from this order that the present appeal is taken by the insolvent debtor.

It is quite apparent from this statement of the case, and the defence interposed by the insolvent, that the important question involved is as to the extent to which State insolvent laws can be made effectual to secure the full administration of the assets of insolvent debtors, within the jurisdiction of the several States.

It would be a very unnecessary work for this Court, at this day, to restate the reasons and arguments employed by the Supreme Court of the United States, in

Brown *vs.* Smart, *et al.*

the many cases that have been decided by that tribunal, wherein it has been held, that the Legislatures of the several States of the Union have authority to pass bankrupt or insolvent laws. It has been so held by that high tribunal uniformly and in a large number of cases; but subject to the proviso, that there be no act of Congress in force, establishing a uniform system of bankruptcy, with which such State laws could conflict, and that such State insolvent laws be so framed that they do not in any way impair the obligation of contracts. And, as a logical result of this power retained by the States, it is held, that such bankrupt or insolvent laws of the State, which discharge both the person of the debtor and his future acquisitions of property, do not impair the ôbligation of contracts, so far as respects debts contracted *subsequent* to the passage of such laws. But such State laws can have no extra-territorial effect, so as to operate upon the rights or claims of non-residents of the State; and therefore the claims of citizens of another State will not be barred by a discharge under the State insolvent law, although the debt was made payable in the State where the discharge was had; and this without reference to the place where the contract was made. This is the result of the decisions of the Supreme Court, from that made in the leading case of *Sturges vs. Crowninshield*, 4 *Wheat.*, 122, to that of *Baldwin vs. Hale*, 1 *Wall.*, 223. If, however, a creditor, being a citizen of another State, invokes the aid of the insolvent laws, or voluntarily makes himself a party to the proceedings thereunder, he thereby abandons his extra-territorial immunity, and he will be bound, and his claim discharged, as if he were a domestic creditor. *Clay vs. Smith*, 3 *Pet.*, 411; *Jones vs. Horsey*, 4 *Md.*, 306. And it is among the privileges and immunities secured to the citizens of each State, by the Federal Constitution, Art. 4, sec. 2, to institute and take the benefit of

legal proceedings in the Courts of any other State (*Campbell vs. Morris,* 3 *Harris & McH.,* 535; *Corfield vs. Coryell,* 4 *Wash. C. C.,* 380; *Morgan vs. Neville,* 74 *Penn. St.,* 52; *Reynolds vs. Geary,* 26 *Conn.,* 183; *Barrell vs. Benjamin,* 15 *Mass.,* 354,); so that the New York creditors had full right to file the petition, and to ask to have the debtor declared an insolvent, for the act of insolvency set forth in their petition.

It is not, and could not for a moment be, contended that the adjudication of the debtor an insolvent, under the State insolvent law, could operate to discharge or impair the obligation of the original contracts of indebtedness from the insolvent debtor to the non-resident creditors. Such contracts are entirely exempt from the operation of the State insolvent laws, unless the creditors elect to become parties in some form to the insolvent proceeding. But it is insisted, on the part of the appellant, that the deed of assignment having been made and accepted on the basis of a contract for the release and satisfaction of pre-existing debts, it constitutes a contract with the preferred non-resident creditors, which is equally protected from the operation of the State insolvent law, as the original contracts creating such debts; and therefore the assignment itself cannot be affected or invalidated by the operation of such insolvent law. But to that proposition, as presented under the facts of this case, we cannot assent. The questions are, whether the making of such deed of assignment constitutes an act of insolvency on the part of the debtor, and if so, whether such assignment is subject to the operation of the insolvent law of the State. It requires no argument to show that if such proposition as that contended for could be maintained, it would virtually defeat the power of the States to enforce or give effect to their insolvent laws; for there are few merchants or traders,

such as those mentioned in the 13th section of the insolvent law of this State, who have not creditors beyond the limits of the State, and to whom or for whose benefit such assignments could be made without risk of impeachment. But such method, we think, can never be sanctioned as a means to defeat, to any extent, a great and important power of internal government reserved to the States.

As will be observed, the statute makes no sort of reservation in favor of non-resident creditors to whom or for whose benefit assignments may be made. On the contrary, it is emphatic in declaring that *no* deed or conveyance executed by the debtor, being of the class of debtors mentioned, and being insolvent or in contemplation of insolvency, *shall be lawful or valid, if the same shall contain any preferences,* save such as are mentioned; *and all preferences,* with the exceptions named, *shall be void, however the same may be made,* if the debtor be proceeded against under, or shall apply for the benefit of, the statute, within four months after the recording of the deed or the creation of the preference, and shall be declared, or become, an insolvent under the law. Here the proceedings were instituted within the time prescribed; and, by section 23 of Art. 48, it is expressly declared that the making of any such assignment with preferences shall be deemed an act of insolvency by the debtor.

There can be no question of the jurisdiction of the Court over the insolvent debtor himself; and the property being here and within the jurisdiction of the Court, and the assignment having been made here, and being dependent upon the law of this State for its validity, we fail to perceive why the jurisdiction of the Court below was not well exercised. It is certainly a well settled principle that, in cases like the present, the *lex loci rei sitæ* must alone furnish the rule for deter-

mining the validity of the assignment, and the pre-
ferences thereby created; and though the instrument
may be valid according to the principles of the common
law, it can hardly be contended that its validity can be
maintained in defiance of the express terms of a statute
declaring it to be absolutely void. *Whart. Confl.
Laws, secs.* 297, 312, 802. The deed of assignment
was made and accepted with reference to the terms of
the statute that we have quoted, and with the implied
condition annexed, that if the assignor was proceeded
against in insolvency within four months, and declared
an insolvent, the deed would fall as a necessary legal
consequence. This results from the general principle
well established, that the laws which subsist at the
time and place of making a contract enter into and
form a part of it, as if they were expressly referred to
or incorporated in its terms; and this rule embraces
alike those which affect its validity, construction,
discharge, and enforcement. *Ogden vs. Saunders,* 12
*Wheat.,* 353; *Von Hoffman vs. City of Quincy,* 4 *Wall.,*
535; *Edwards vs. Kearzey,* 96 *U. S.,* 595, 601. There-
fore, under the statute to which we have referred, the
making the deed of assignment was clearly an act of
insolvency, subjecting the debtor to adjudication, and
such adjudication of the debtor as an insolvent, based
upon the fact of his making the assignment, of necessity
involves the determination that the deed of assignment
contravenes the provisions of the statute, and is con-
sequently void.

It is insisted, however, that as the non-resident parties
interested in maintaining the deed of assignment have
not been served with process, and, as foreign creditors,
they could not be required to appear and subject them-
selves to be bound by the insolvent proceedings, no
adjudication can be had that would affect the assign-
ment. or the rights of the parties thereunder. But it is

Brown *vs.* Smart, *et al.*

manifest if that position be correct, it would be entirely futile to proceed against the insolvent debtor; for though he might be adjudicated an insolvent, yet his property would be withheld from administration under the insolvent law, and the mass of his creditors get nothing. But is it necessary to serve or attempt to serve process on the non-resident creditors? It is certainly unnecessary to do a nugatory thing, or a thing that is without practical effect upon the rights of any one. It is conceded that the non-resident creditors could not be required to come in against their own consent, and thus subject their original contracts with the debtor to the operation of the State insolvent law; and it was certainly not necessary to make such creditors parties in order to confer jurisdiction upon the Court to proceed against the insolvent debtor; nor was it essential to the power of the Court to declare the debtor an insolvent. Such an adjudication declares the *status* of the debtor, and is a judgment *in rem,* or in the nature of a judgment *in rem;* and as such it is conclusive, and binds all persons, whether parties or otherwise, as to the particular point or matter decided: 2 *Tayl. Ev.,* (6th *Ed.,*) *secs.* 1487, 1488, 1489; *Freeman on Judgts., secs.* 606 *to* 610. And such being the nature of the judgment required to be passed against the insolvent debtor, all the legal incidents, within the terms of the statute, necessarily follow, and among these is the absolute avoidance of the deed creating the illegal preferences, because the statute so expressly declares. Such certainly is the result in the case of a deed like the present, where both the insolvency of the debtor and the illegal preferences to the creditors are apparent upon the face of the deed; for in such case the deed is made void *ipso facto, et constructione legis,* and in no way depends upon any express declaration of the Court apart from the adjudication of the debtor to be

an insolvent.    The statute, by force of its own terms,
operates upon the deed and (unlike in the cases provided
for in section 25 of Art. 48,) strikes it down from the
moment the debtor is adjudicated an insolvent, the
illegal preference being the basis of the adjudication;
and, in such case, no defence could be interposed to
rescue the deed from the fate .declared for it by the
statute.    The adjudication, with all its direct legal
incidents and consequences, binds every one, unless it
can be shown to have been procured by fraud or col-
lusion.

In the *2nd vol. of Taylor's Evidence*, (*6th Ed.*,) *secs.*
1488, 1489, will be found stated the various cases
wherein the adjudications have been treated as judg-
ments *in rem*, and among these is classed the case of adju-
dication in bankruptcy; and it is based upon the reason
that such adjudication is the judicial declaration of the
*status* of the bankrupt and his effects,—such adjudica-
tion being classed with that granting probate, and
with sentences passed in matrimonial cases.    "These
judgments," says the author, "so far furnish conclu-
sive evidence of the points they decide, not only against
the parties who were the actual litigants in the cause,
*but against all others*, that, unless it can be shown, either
that the Court had no jurisdiction, or that the judg-
ment was obtained by fraud or collusion, no evidence
can be admitted, at least in any civil cause, for the
purpose of disproving the facts adjudicated.    This rule
appears to rest, partly, upon the ground, that in most
of the above cases every one who can possibly be affected
by the decision is entitled, *if he think fit*, to appear and
assert his own rights, by becoming an actual party to
the proceedings; and, partly, upon the ground, that
judgments *in rem* not merely declare the *status* of the
subject-matter adjudicated upon, but *ipso facto* render
it such as they declare it to be."    See also 1 *Stark.*

Brown *vs.* Smart, *et al.*

*Ev.*, 286, and *Mankin vs. Chandler & Co.,* 2 *Brock.*, 125. The insolvent Court is open to any and all persons who may possibly be affected by the adjudications of that tribunal upon the *status* of the debtor, alleged and shown to be insolvent; and those who have rights to assert must appear and assert them at the proper time.

The fact therefore that the foreign creditors were not served with process, and could not have been compelled to become parties to the insolvent proceedings even if they had been served, cannot be assigned as ground of error in the order of the Court below. That order is not objectionable because it declares in terms the deed of assignment to be void, that being the legal result of the adjudication of insolvency founded thereon, as declared by the statute. The order appealed from will be affirmed.

*Order affirmed, and*
*cause remanded.*

(Decided 14th June, 1888.)

BRYAN, J., filed the following dissenting opinion:

The Constitution gives to the Court of Common Pleas exclusive jurisdiction in all applications for the benefit of the insolvent laws within the City of Baltimore. But the mode in which this jurisdiction is to be exercised, and the limits to which it extends are determined by the provisions of the statute law. The power of the Court over this subject has been conferred by successive enactments of the Legislature. By the Act of 1880, ch. 171, the jurisdiction was given for the first time to make adjudications of involuntary insolvency; and the whole power of the Court in proceedings of this character is derived from this Act and its amendments. The Act of 1886, ch. 298, made some changes in the thirteenth, twenty-third and twenty-fourth sec-

tions of the law, and gave them their present form. The thirteenth section declares that no deed executed by a banker, stock-broker, merchant, manufacturer or trader, being insolvent, or in contemplation of insolvency, shall be lawful or valid if the same shall contain any preferences, save such as result from operation of law, and save certain wages or salaries to clerks and others; provided the party making such deed shall be proceeded against under section twenty-four of the Act, or shall apply for the benefit of the Act, under section one, within four months after the recording of the deed; and shall be declared, or shall become under the provisions of the Act, an insolvent. The twenty-third section declares what shall be deemed an act of insolvency. Among other things which are enumerated, it includes the execution of a deed giving such preferences as are stated in section thirteen, when such deed is made by a person belonging to any of the classes therein mentioned. The twenty-fourth section provides the mode of proceeding against persons who have committed acts of insolvency. After a petition is filed alleging the facts on which the application is grounded, the Court is directed to issue a summons for the debtor, and to require him to show cause why an adjudication of insolvency shall not be made against him. If the allegations are sustained and are sufficient to warrant it, it is enacted that the Court shall make an adjudication that the debtor is insolvent; and it is provided that thereupon his right and power to dispose of any part of his property shall cease; and when the Court shall appoint a preliminary trustee and his bond shall be approved, all the property of the insolvent shall be divested out of him and shall be vested in the trustee; and thereafter such proceedings shall be had, as are prescribed in relation to persons who apply for the benefit of this law. It will be seen that the debtor is

the only person for whom a summons is authorized to be issued; and he is the only person who is mentioned in the adjudication of insolvency; and his property alone is declared to be divested.

Let us now examine the proceedings of the Court below. The petition filed against the debtor alleged that he, being a merchant and trader, and being indebted to the petitioners in the sum of about six hundred dollars, and being insolvent, or in contemplation of insolvency, executed a deed of trust wherein he made several fraudulent and void preferences in contravention of the insolvent laws. The petitioners and the trustee were non-residents. The debtor's answer admitted the execution of the deed of trust, but denied that the preferences were illegal; and alleged that the persons named as preferred creditors all reside out of the State of Maryland; and were creditors under contracts with the debtor made and to be performed out of the State of Maryland; and that each of said creditors agreed with the debtor at the time of the execution of the deed to accept the provisions therein made for them in full satisfaction of their respective claims; and did in consideration of the deed and its provisions release the debtor from all obligation to them on account of the said debts. The answer denied the jurisdiction of the Court to decide upon the validity and effect of the deed of trust. The cause being submitted on petition and answer, the Court overruled the defences and passed an order or decree adjudicating the debtor an insolvent, and declaring the deed of trust void. As the deed gave preferences to certain creditors, the debtor committed an act of insolvency; and if the Court had merely adjudicated him an insolvent, its decree would have been within the limits prescribed by the statute. Such a decree unreversed conclusively determined the legal *status* of the debtor,

and it would not be competent to draw this determination in question before any tribunal. All Courts would be obliged to recognize him as having all the rights, privileges, disabilities, capacities and incapacities of an insolvent debtor. Decisions of competent Courts on the personal, domestic and social relations of individuals, are regarded as judgments *in rem*, and preclude all further controversy of the questions decided. Marriage and divorce, legitimacy and bastardy, insolvency and bankruptcy, grants of probate and of administration, and such like matters belong to this class of subjects. There is no difference of opinion among the Courts as to the effect of judgments of this description. The judgment is a conclusive settlement of the matter decided; but is not evidence of any other matter which may be inferred by argument from it. It is unnecessary to elaborate this question; because in *Emmert vs. Stouffer*, 64 *Md*, 551 *and* 552, it received the careful consideration of this Court, and was there decided in accordance with the uniform course of the authorities since the *Duchess of Kingston's Case.*

Among the illustrations made by this Court in the case just mentioned was one quoted from *Taylor on Evidence, sec.* 1490, in these words: "Thus, although the ecclesiastical Courts *were* not, and the existing Courts of probate *are* not, authorized to grant letters of administration, unless the intestate be *dead*, these letters are so far from being conclusive evidence of the death, when that fact is put in issue in another Court, that on one or two occasions they have not been regarded as *prima facie* proof." And there was an illustration from the Supreme Court of the United States, where in *Mutual Benefit Life Ins. Co. vs. Tisdale*, 91 *U. S.*, 238, it was held that in an action brought by a plaintiff in his individual character, letters of administration to him were no evidence whatever of the death of his intestate.

Of course the death of the intestate was a necessary and indispensable preliminary to the grant of letters of administration; and it was incontrovertible that the Probate Court must have found the fact of the decease before it granted letters. But we adhered to the rule of evidence established by unbroken precedent, and approved the statement in *Taylor on Evidence, sec.* 1520, "that it is an unquestionable rule of law that neither a judgment *in rem* nor a judgment *inter partes* is evidence of any matter which can be *inferred only by argument* from the judgment." The debtor had made a deed with preferences, and thereupon he became liable to be adjudged an insolvent. The statute makes no mention of any other judgment as within the Court's power; and certainly the Court derives its power entirely from the statute. In an action against the trustee, or the preferred creditors, or any one else, an adjudication of insolvency would have been evidence that the debtor had been legally declared an insolvent, and of nothing else whatsoever. It would not even have been evidence of any matter which could have been inferred by sure and inevitable deduction from the adjudication. And yet the Court not only draws the inference that the deed is void; but so far as its decree can operate, prevents persons who were not parties to the proceeding from ever making a defence against this inference.

Let us pursue this subject. The twenty-fourth section of the insolvent law (1886, chapter 298) enacts that after the approval of the bond of the preliminary trustee, such proceedings shall be had as are prescribed in relation to persons who shall apply for the benefit of the law. By the seventh section of this law, confessions of judgment and conveyances made by an insolvent for the purpose of defrauding his creditors, or giving an undue preference were declared void, and the property or thing conveyed or assigned was vested in the trustee

in insolvency. This section refers to proceedings under applications voluntarily made by an insolvent debtor. Under this section it has never been held in a solitary instance that the confessions of judgment or the conveyances mentioned were *ipso facto* void. The trustee has uniformly been required to assert his title before the appropriate tribunal against the person claiming under the judgment or conveyance; and in due course of law the question in controversy has been determined between the litigants. And it would have been a great anomaly to hold otherwise. When a statute states that under certain circumstances a deed shall be void, it does not dispense with the ordinary proceedings necessary for a judicial decision of the questions involved. Far less can it be construed to take away from any claimant, the inestimable right of being heard in defence of his own property. No matter how clear the question may be supposed to be, it cannot be decided without a hearing of the party interested. If the Court had possession of a hundred affidavits of the most credible witnesses, fortified by the written confession of the party himself, it would still be obliged to proceed according to the ordinary course of justice, and give him a hearing. The necessity of hearing both sides is an intuitive principle of justice. So far as we know, it has been maintained as an axiom in all countries where the semblance of freedom has existed. It seems to be the *quod semper, quod ubique, quod ab omnibus.* Certainly in our own jurisprudence, it has been the frequent theme of lofty and fervent eulogium. Lord COKE, in the quaint pedantry of his age, makes it a bitter reproach against Rhadamanthus, that he set at naught this principle while presiding in the supreme tribunal of Pluto's kingdom. Another eminent Judge, nearer to our own time, has said that a disregard of it is a violation of the first principles of justice. And no less

State, use of Harvey *vs.* Balto. & Ohio R. R. Co.

a jurist than the illustrious Story has said that a judgment pronounced without hearing both sides wants the most essential quality of a judicial sentence, and can have no other force than belongs to the edict of every power which is strong enough to execute its own decrees.

Upon the considerations which I have stated, it seems to me that the Court of Common Pleas had no jurisdiction to bind the title of the trustee in the deed. I forbear to express any opinion on the defences set up in the answer, because as the Court had no power to defeat the trustee's title; neither had it power to sustain it. It had not the jurisdiction to decide the question at all; nor has this Court on the hearing of an appeal from it. The jurisdiction of a Court is the power which the law has given it to render a judgment. When this power has not been given; or in other words where the Court has no jurisdiction, its judgments are absolutely null and void. I think that the order of the Common Pleas should be reversed, and that a new decree should be passed conforming to the terms in which the jurisdiction is conferred by the statute.

(Filed 13th November, 1888.)