GLOBE SLICING MACHINE COMPANY, INC., *v.*
J. J. MURPHY.
[No. 98, October Term, 1931.]

668

*Decided January 14th, 1932.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, PARKE, and SLOAN, JJ.

*Arthur E. Hamm* and *Frank Driscoll,* for the appellant.

*R. Palmer Ingram* and *Helen Elizabeth Brown,* for the appellee.

BOND, C. J., delivered the opinion of the Court.

The defendant in this case has appealed from a judgment rendered in a suit by a former salesman for a commission on

a sale of machines, and the main question is that of the effect on his claim of a repudiation of a sale arranged by him, and a subsequent completion of sale of some of the machines, upon slightly different terms, without further services by him.

The Consolidated Gas & Electric Company of Baltimore City, early in the year 1930, changed the electric current supplied by it to customers in some areas from twenty-five cycles to sixty cycles, and, finding that a few customers were using electric slicing machines made by the Globe Company of New York, wrote the Globe Company on April 22nd, 1930, asking whether the motors in the machines could not be replaced by sixty-cycle motors, to make the same machines run on the changed current, and requesting prices for furnishing and installing the motors if they could be replaced. The plaintiff, Murphy, was at that time a salesman of the Globe Company in Baltimore, and the letter of the gas and electric company was referred to him from New York. Murphy, in answer to its question, wrote the gas and electric company that it was not possible for the motors then in use to be changed, and suggested that the Globe Company would be able to exchange the whole machines themselves. And shortly afterwards he gave the gas and electric company prices on sixty-cycle machines. A discount was offered for a requisition or order for ten or more, and the number in use in the section of territory involved was stated by him to be fourteen. Before anything more was done, Mr. Murphy's agency was terminated, with permission given him to take a week after May 8th to clean up matters that might require his personal attention and to close such prospects as he might have; and he was succeeded in the agency by a Mr. Krafft. And on May 14th he received from the gas and electric company, and forwarded to the Globe Company, an order for twelve machines. On June 5th, before any commissions were paid, the Globe Company received from the gas and electric company a complaint that, contrary to Murphy's representation, it was found that motors in the old machines were replaceable, and there was no need of purchasing new ma-

chines. And the gas and electric company declared that, under the circumstances of apparent misrepresentation on the part of Mr. Murphy, it would expect to return all the sixty-cycle machines which he had furnished, and would buy sixty-cycle motors instead. Mr. Murphy admits having received this letter of repudiation. The Globe Company requested an explanation from him, saying that on the facts reported in the letter it would not hold the purchaser to the contract, and the plaintiff replied that his representation had been based upon his experience; that, not being an electrical engineer, he was unable to give the purchaser technical advice, and that time had not permitted the replacing of the motors if they could be replaced. And he added that he could only suggest that the Globe Company use its own judgment, and he would be forced to abide by the decision, whatever it might be. It appeared that in the latter part of June, the gas and electric company notified the Globe Company that it had been decided to retain ten of the machines covered by the original order, upon terms and conditions specified in the letter. It was found necessary to install new machines in place of only five of the old ones; and it was admitted on behalf of the defendant that the gas and electric company had paid for the machines which it finally retained. In August of 1930, the plaintiff wrote to the Globe Company asking about commissions on the sale, and the Globe Company replied to him that, as soon as the old machines traded in were received, the commission would be divided equally between Mr. Murphy and Mr. Krafft, in view of work done by Mr. Krafft to retain the order and the service that would be given by him to the purchaser in the future. Later the Globe Company did send Mr. Murphy a check for what it estimated to be half the commission; the check was returned and the present suit for the total of commission allowable on such a sale was brought.

With this the plaintiff's proof ended. The defendant offered evidence tending to prove that, after the gas and electric company's repudiation of the purchase early in June, the Globe Company, on June 16th, referred the correspond-

ence to Mr. Krafft, with a request that he try to arrange
with the gas and electric company to retain the machines,
and promised Mr. Krafft, and later paid him, for his com-
pensation, fifty per cent. of the commission for sale of such
machines as the gas and electric company might keep. What
negotiations Krafft had, and what work he did, are facts not
covered by the testimony. The witnesses who would have
had the knowledge of these facts were not in court.

The appellant's brief is not prefaced with any statement
of the questions presented, as required by the rules of this
court, and only from the argument is it possible for the court
to ascertain what exceptions are, and what are not, aban-
doned. The argument is confined to the exception to rulings
on defendant's prayers for instructions or declarations of
law, and in accordance with the rule we take the other excep-
tions, those to rulings on evidence, to be abandoned. There
were no prayers offered on behalf of the plaintiff.

There were three prayers for the rendering of a verdict for
the defendant as matter of law. The first referred to a
stipulation in a written contract for plaintiff's agency as a
salesman, that any questions which might arise in any court
of any state as to the validity, construction, interpretation, or
performance of the contract, should be governed by the laws
of the State of New York; and the trial court was asked to
rule that, since no attempt had been made by the plaintiff in
this case to show what were the laws of New York deter-
mining the rights and obligations involved in the contro-
versy, those rights and obligations could not be determined,
and the plaintiff could not recover. But whatever may be
the force in other answers to the argument, it is sufficient to
observe that the consequence does not follow from a failure
to prove the laws of a foreign state, unless rights under
statute laws should be in question, and we have no reason to
suppose that any statute law of New York might govern
questions such as arise in this case. The express adoption
of the foreign law by the parties has the same effect as adop-
tion by rule of law. "The laws which subsist at the time and
place of making a contract enter into and form a part of it,

as if they were expressly referred to or incorporated in its terms; and this rule embraces alike those which affect its validity, construction, discharge and enforcement." *Brown v. Smart,* 69 Md. 320, 330, 14 A. 468, 471, 17 A. 1101. And it has been decided many times that, in the absence of the requisite proof of the foreign law, the law of the forum will be looked to for guidance. *Harper v. Hampton,* 1 H. & J. 622, 710; *Gardner v. Lewis,* 7 Gill, 377, 393; *Dakin v. Pomeroy,* 9 Gill, 1, 6; *Green v. Trieber,* 3 Md. 28, 40; *Haney v. Marshall,* 9 Md. 194, 212; *Conolly v. Riley,* 25 Md. 402, 419; *State, use of Allen, v. P. & C. R. Co.,* 45 Md. 41, 46; *De Bearn v. Winans,* 111 Md. 434, 470, 74 A. 626. We find no error in the rejection of the first prayer.

A second and a ninth prayer for the rendering of a verdict for the defendant as matter of law were grounded on the general contention that there was no legally sufficient evidence of a breach of the contract by the defendant; and particularly, reliance was placed on a provision in the contract that, "it is mutually understood and agreed that the company is to have the right at all times and under any circumstances to adjust the commission on any sale that may be in dispute between the salesman and any other salesman for the company; that is, where any question arises as to which salesman is entitled to the commission, the decision of the company shall be final." Upon a reading of the whole contract, there might be a question whether this clause or any other part of the contract was concerned with compensation for services in connection with an uncompleted or repudiated sale and further work necessitated to perfect it; but the parties and the court below all took it to apply to such services, and we proceed upon that construction. The company made its division of the commission without waiting for a dispute to arise between salesmen, but, as a claim for compensation to the second salesman called in to complete the sale would be inevitable, there would seem to be in the anticipation of it no substantial departure from the letter of the provision. This court agrees that, as the order procured by the plaintiff was, when his services ended, rescinded, and the

sale thus left in an incomplete state, he was under this clause entitled to no more of the commission than the company in good faith determined, unless it should appear that, notwithstanding the incompleteness of the sale at that time, it was completed in the end on the plaintiff's work alone; that is, that the purchaser's final acceptance was obtained by a reversal of its rescission without any other intervening service on behalf of the seller to obtain it, and that does not appear. On the contrary, apart from other references in the evidence, it was stated in the letter in which the Globe Company notified the plaintiff that the commission would be divided equally, a letter introduced during the cross-examination of the plaintiff, that it was Mr. Krafft's work in holding the order or part of it that entitled him to half of the commission. In short, it is the opinion of this court that under his contract, so far as the evidence showed, the plaintiff was as matter of law entitled to only the amount awarded to him by the company's decision. *Devoine Co. v. International Co.,* 151 Md. 600, 603, 136 A. 37. No question of good faith in that decision has been raised.

The defendant did not obtain a ruling to this effect, it did not ask for any. Its prayers for a verdict as matter of law, and also two rejected prayers for specific declarations of the law on the effect of the company's decision, while asserting the finality of it, went further and denied any right in the plaintiff to any share of the commission at all, even that awarded by the decision, because he had before suit refused that amount as short of his full legal compensation. Such a refusal of a smaller amount than that claimed does not cause the loss of any right to the smaller amount. The company may be considered as having made before the suit a tender sufficient in form; but a rejected tender does not deprive the rejecting party of a right to the amount if he is proved to have been entitled to it. He can recover the amount in his suit, subject only to liability for costs of an unnecessary suit if the tender is pleaded and the admitted amount paid into court for the plaintiff. *Poe, Practice,* sec. 611. There was

674

no such plea and payment into court in this instance. The defendant in its pleas denied that it owed anything.

One further argument is made in support of the prayers for rendering a verdict as matter of law; that some of the terms of the contract were in letters or cards containing modifications or amendments in regular course; that these were not filed with the declaration in the case; and that therefore the requirements for suits under the Speedy Judgment Act of Baltimore City, where the suit was brought (Charter, sec. 313), had not been complied with. But such documents are required only as a condition to a speedy judgment in the absence of proper pleas, and, after proper pleas have been filed and a speedy judgment avoided, their absence would be without effect.

We find no error, therefore, in the rulings on prayers submitted by the defendant.

*Judgment affirmed, with costs to the appellee.*