THOMPSON, ADMINISTRATOR, v. STATE HOSPITAL OF THE STATE OF ARKANSAS.

4-7696                               188 S. W. 2d 503

Opinion delivered July 2, 1945.

R. S. *Wilson,* for appellant.

*Guy E. Williams,* Attorney General, and *Cleveland Holland,* Assistant Attorney General, for appellee.

McHANEY, J. The question for determination is the liability of the estate of a deceased insane person for his or her keep in the State Hospital, confined there on the finding and decision of the county and probate judge, where the estate of such person, over and above all indebtedness, "is more than sufficient for the support of all his (or her) natural dependents."

The facts are stipulated. Della Pinkston was found to be incompetent and committed to the State Hospital on January 16, 1937. A guardian was appointed for her person and estate on January 19, 1937. On May 7, 1937, the guardian was authorized by court order to spend $50 per month for his ward's maintenance and support while

at home from the State Hospital. She died intestate on July 13, 1941, while in the State Hospital. No claim was presented to the guardian for her support by appellee during her lifetime, and the guardian, in his final settlement with the probate court reported she died owning personal property in the sum of $1,200. On July 19, 1942, appellee presented its claim to appellant who had been appointed administrator for the keep of decedent for 145 weeks at $4 per week, or a total of $580, and same was disallowed. It was presented to the court on these facts and the court allowed the claim and entered judgment against the administrator of said estate for said sum.

The statute on which the claim is based is § 12554 of Pope's Digest, which reads as follows: "Any citizen or resident of the state of Arkansas, duly found to be insane, according to the proceedings specified in this act, may be admitted into the State Hospital, if there be unoccupied room, upon conditions, to-wit: If he (or she) has been found, upon examination, as specified in § 12546, to possess estate, over and above all indebtedness, more than sufficient for the support of all his (or her) natural dependents, his (or her) natural or legally constituted guardian shall pay to the treasurer of said asylum, in advance, an amount equal to six month's board, at a rate not exceeding four dollars per week, except as hereinafter provided; shall obligate himself, or herself, in a sufficient bond, to pay all damages which said insane person may do to the building or furniture of said State Hospital, not exceeding twenty dollars; shall supply him (or her) with sufficient and suitable clothing, as may be required by the superintendent and shall remove him (or her) when so required and notified by the chairman of the board and superintendent of said hospital. The natural or legally constituted guardian of said insane person may contract with the superintendent for special attentions to him (or her) at an additional rate not exceeding the amount of fifteen dollars per week, as may be agreed. In case of the death or removal of said insane person before the expiration of the time for which any payment may have been made, the treasurer of said hospital shall refund to the natural or legally con-

stituted guardian of said insane person, an amount proportional to the unexpired time for which such payment had been made; provided, that indigent persons who are not able to pay, or who have no estate out of which to pay such expenses, shall have preference over those who have such estate.''

For a reversal of the judgment appellant first says that there is no record of an examination to determine the ability of the insane person to pay and no finding or order of the probate court as to whether she had any estate of her own at the time of her commitment. The statute quoted above does provide: ''If he (or she) has been found, upon examination, as specified in § 12546, to possess estate,'' etc., but, on examination of § 12546, we do not find it ''specified'' that the county and probate judge or any other person shall make an examination to determine the ability of the insane person to pay for his or her maintenance in the State Hospital. It does provide for said judge to have a hearing to determine the sanity of the person informed against as provided in § 12545. The judge shall cause an examination to be made of such person by two competent and disinterested physicians, and in their report of such examinations, in addition to other matters, they are required to answer 26 questions set out in said § 12546. The last question they are required to answer, No. 26, is: ''Has he (or she) more than sufficient estate for the support of his (or her) natural dependents? (Answer).''

The statute does not make any requirement that the judge shall make any finding in this regard, but the next section, 12547, requires that his decision in writing with copies of the information by the citizen and of the statement of the physicians, including the statutory interrogatories and the answers thereto, to be forwarded to the superintendent of the State Hospital. We assume that this is required for the information of the State Hospital authorities, not only in the treatment of the patient, but in determining whether the patient is able to pay for maintenance.

Another question argued is whether a cause of action on appellee's claim survived said intestate. We think it did and that the Legislature so intended it in the section quoted above. The statute refers to the estate of the insane person, whether such person possesses an estate, over and above all indebtedness, more than sufficient for the support of natural dependents, and if so requires the guardian to pay to the treasurer of appellee, in advance, six months board at a rate not exceeding $4 per week. It makes no express provision regarding future payments by the guardian, if the ward remains longer than six months, but we think the necessary implication is that such payments shall continue thereafter and, if not paid during the lifetime of the ward will become a claim against the ward's estate after death. Said section also provides that the guardian may contract with the superintendent for special attention to the ward at a rate not exceeding $15 per week as may be agreed. If there had been such a contract, (there was none here) a failure of the guardian to pay, during the lifetime of the ward, would undoubtedly survive and be a valid claim against his or her estate. The concluding sentence of said section, "provided, that indigent persons who are not able to pay, or who have no estate out of which to pay such expenses, shall have preference over those who have such estate," clearly shows that it was the intention of the Legislature to require those who are able to pay to do so, and we see no reason to confine the liability so created to such payments as may be made by the guardian during the lifetime of the insane ward, where the estate in the hands of the administrator, as here, is amply sufficient to pay the claim, in addition to all indebtedness of the deceased.

Nor do we think that the failure of appellee to collect from the guardian, as provided by said statute prevents it from prosecuting the claim against appellant. The estate has not been prejudiced by the failure of appellee to act. The claim presented in this action is the same as it would have been had it been made to the guardian, and no contention is made that any part of it

has been paid. There is no contention that laches or limitations is a bar to the action.

Appellant cites certain cases construing the statutes of other states relating to the liability of relatives of deceased insane persons, such as the New York case of In re *Willis*, 94 Misc. 29, 158 N. Y. S. 985, and the New Jersey case of *Morris County Welfare Board* v. *Gilligan*, 130 N. J. L. 83, 31 A. 2d 805, but we think they are not in point here. The statutes are different, and there is no attempt here to impose liability on any relative of decedent. A great many of the statutory provisions relating to the State Hospital, including said § 12554, were repealed by Act 241 of 1943, and in § 2 pay for maintenance of patients is definitely provided for, even to the extent of making the person legally bound for the patient's support liable therefor. But the rights here involved arose before the passage of said Act 241, and it has no application here.

We·conclude that the trial court correctly allowed the claim, and the judgment is accordingly affirmed.