The State of Ohio, Appellant, *v.* The Security Central National Bank of Portsmouth, Admr., Appellee.

(No. 626—Decided May 20, 1955.)

*Mr. C. William O'Neill,* attorney general, and *Mr. Kenneth F. Manning,* for appellant.

*Messrs. Bannon, Howland & McCurdy,* for appellee.

Collier, J.  This is an appeal on questions of law from a judgment rendered in the Court of Common Pleas of Scioto County in favor of the defendant.  The plaintiff, the state of Ohio, commenced this action September 29, 1953, by C. William O'Neill, Attorney General, on behalf of the Department of Public Welfare of the State of Ohio, upon an account for the support of defendant's decedent under Sections 1815 to 1815-10, inclusive, General Code (Section 5121.10 *et seq.,* Revised Code), commonly known as the "Pay Patient Law."  The action was instituted against the deceased patient's administrator subsequent to the administrator's disallowance and rejection of the state's claim as a debt against the estate.

The case was heard by the court without a jury.  Defendant's answer consists of three defenses, as follows:

1. A general denial.

2. That the state's claim had been constructively rejected by operation of law pursuant to Section 10509-113, General Code

(Section 2117.11, Revised Code), and that plaintiff had not filed timely suit after the rejection of the claim.

3. That the state, by accepting modified payments of less than the prescribed statutory weekly amounts of support during the lifetime of the patient, thereby waived any right to further payments for such support.

The errors complained of are as follows:

1. The court erred in dismissing the petition of the plaintiff.

2. The court erred in finding, upon the issues joined, in favor of the defendant.

3. The court erred in rendering judgment in favor of the defendant.

4. The judgment of the court is contrary to the law and the evidence.

The undisputed facts in the case are as follows:

Kendall Read was probated incompetent and committed to the Athens State Hospital by the Probate Court of Scioto County, October 10, 1910, at which time he was possessed of no estate. In the year 1920, Kendall Read began to receive pension benefits from the United States government, and, from September 1, 1920, until July 10, 1925, the whole cost of supporting the patient was paid by his guardian. In July 1925, the guardian was informed of the amendment of Section 1815-2, General Code, which increased the rate for support of patients of all state hospitals to $5.50 per week. The guardian, in a letter to the Department of Public Welfare, requested that she be permitted to pay at the former rate of $3.50 per week so that she might provide her ward (Kendall Read) with incidental conveniences not furnished by the state. At that time, the guardian was advised by letter as follows:

"In case there is an estate and insufficient income from it to pay the full support at the rate of $5.50 per week the unpaid balance may stand a charge against the estate to be adjusted at the discharge or death of the patient."

In August 1929, Ella Read, a sister of the patient, succeeded Elmira Read as guardian; and in September 1933, the Security Central National Bank of Portsmouth, Ohio, was duly appointed guardian of the patient, Kendall Read. The payments for support of the patient continued at the modified rate

of $3.50 per week until October 7, 1949, when the guardian was informed that the statutory rate would be increased to $11.55 per week, and thereafter all bills rendered by the state to the guardian were paid at that rate until September 28, 1952. The patient died March 7, 1953, and no payments were made covering the period from September 28, 1952, to the date of his death.

Following the death of the patient, the Department of Public Welfare presented a claim in the amount of $3,375.58 to the administrator, and an exchange of correspondence concerning the validity of the claim was carried on. The specific amounts claimed by the state are as follows:

1. $1,550.14 from May 14, 1911 (effective date of Section 1815-10, General Code), to September 1, 1920, when no payments were made for the support of the patient.

2. $1,272.22 from July 10, 1925, when the guardian requested the rate of $3.50 to remain in effect, to October 9, 1949, the difference between the rate at which the guardian paid and the full per capita cost rate effective in those years.

3. $288.00, from September 28, 1952, to March 7, 1953, the date of patient's death, a period for which no payment has been made, the full per capita cost.

Total, $3,110.36.

The first question for consideration is presented by the second defense of defendant's answer, to the effect that this action was not commenced within the time prescribed by statute after the constructive rejection of the claim by the defendant's administrator. Section 10509-113, General Code (Section 2117. 11, Revised Code), provides:

"A claim shall be deemed rejected if the executor or administrator, on demand in writing by the claimant for an allowance thereof within 5 days, which demand may be made at presentation or at any time thereafter, fails to give to the claimant, within such period, a written statement of the allowance of such claim. Such rejection shall become effective at the expiration of such period."

The evidence does not establish any attempt to proceed under such statute. No demand within five days in writing was ever made by the state for an allowance of the claim.

Section 10509-133, General Code (Section 2117.12, Revised

Code), provides that the claimant must commence an action on a claim within two months after it has been rejected by the administrator. After the death of the patient and the appointment of the defendant as administrator of his estate, there was an exchange of letters between the parties concerning the validity of the account. On August 1, 1953, counsel for defendant addressed a letter to Mr. Burke, Supervisor of the Support Division of the Department of Public Welfare, as follows:

"Your letter of June 10 received. As suggested by you in the last paragraph of your letter, we do not regard your claim as a valid one. Consequently, you may regard this as a formal rejection of your claim and refer it accordingly."

An examination of this correspondence clearly indicates there was no intention by either of the parties prior to this date to declare a formal rejection of the claim. The above-quoted letter is marked received by the Department of Public Welfare August 3, 1953, and the present action was commenced by filing the petition with the clerk of courts of Scioto County on September 29, 1953, which was within the two-month period provided by statute. We, therefore, find no merit in the second defense of the answer.

In the third defense set forth in defendant's answer, defendant contends that the modified payments made by the different guardians, which payments were accepted by the state without further demands for the full per capita support cost of the patient, constitute payment in full. Section 1815-10 General Code (Section 5121.10, Revised Code), which was enacted in substantially its present form and became effective May 14, 1911, read as follows:

"Upon the death of a person who is an inmate, or has been an inmate, of any of the aforesaid institutions and who is possessed of property, it shall be the duty of the executor or administrator to ascertain from the Department of Public Welfare whether the deceased person was supported while an inmate, and if not, the department may present a claim for support, or for the balance due in case less than the rate prescribed by Section 1815-2, General Code, has been paid. Such claim shall be allowed and paid as other lawful claims against the estate * * *."

It will be noted that the guardian, Elmira Read, was granted permission upon her request to make modified payments beginning July 10, 1925, with notice that the unpaid balance would stand as a charge against the estate to be adjusted at a later date. It is true the state made no attempt to collect this unpaid balance or to give any further notice thereof to the succeeding guardians. It is also true that the guardians made no effort to ascertain the status of the account. Nothing was done by either party until after the death of the patient, when the Department of Public Welfare presented its claim for the unpaid balance for support to the administrator.

The obvious purpose of the "Pay Patient Law" is to place some of the responsiblity for collecting such claims upon the guardians and administrators of the estates of the patients and to relieve the agents of the state from some of the burden of investigation of each particular claim. When we consider the number of such patients in state institutions, we realize what an enormous task such investigations would involve. In the instant case, a duty rested on the different guardians of the patient to ascertain the financial status of the case and the law governing such matters. We do not condone the careless manner in which this account has been handled, both by the state and by the guardians; but, under the express provisions of the statute, the unpaid balance for the support of the patient is clearly a valid claim against the estate of the patient. The state of Ohio is not bound by the statute of limitations as a privilege of sovereignty. 25 Ohio Jurisprudence, 629, Section 285.

For the foregoing reasons, the judgment of the Common Pleas Court is reversed and final judgment is rendered for the plaintiff, the state of Ohio, in the sum of $3,110.36 and costs of this action.

*Judgment reversed and final judgment for plaintiff.*

GILLEN, J., concurs.
McCURDY, P. J., not participating.