WHITWORTH, Administrator *v.* DEPARTMENT
OF MENTAL HYGIENE, STATE
OF MARYLAND

[No. 158, September Term, 1959.]

*Decided March 17, 1960.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Horace P. Whitworth, Sr.,* and *Horace P. Whitworth, Jr.,* for the appellant.

*Stedman Prescott, Jr., Deputy Attorney General,* with whom was *C. Ferdinand Sybert, Attorney General,* on the brief, for the appellee.

HORNEY, J., delivered the opinion of the Court.

This appeal from a judgment of the Circuit Court for Allegany County in favor of the Department of Mental Hygiene against the Estate of Harry E. Kooken, deceased, for the balance claimed to be due for maintenance and support while the deceased was a patient at Springfield State Hospital involves a construction of Section 5 of Article 59 of the Code of 1957 and subsequent amendments thereof.

The facts were stipulated. By its decree dated July 25, 1940, the Circuit Court for Allegany County appointed the father and mother of the incompetent, Harry E. Kooken, trustees to take charge of and manage his property, and the incompetent

was legally committed to Springfield as a patient. In that same year the trustees entered into an agreement with the County Commissioners of Allegany County (County) wherein they agreed that they would pay the County $125 a year for the maintenance and support of the incompetent. The incompetent had no estate other than three life insurance policies, each of which contained a disability clause. When he became disabled, the companies began to pay the trustees an aggregate of $30 a month or $360 a year. From these funds the trustees paid the County $125 per annum as agreed and accumulated the remainder of the income.

The father predeceased the mother, who continued to perform the fiduciary duties as surviving trustee until her death in December of 1956. Several months later Horace P. Whitworth, Jr., was substituted as trustee in the place of those who had died. The substituted trustee continued to make the agreed annual payments to the County until the death of the incompetent on December 3, 1958, but, because of a change in the law, a part of the payment for 1958 was made to the Department of Mental Hygiene (Department). All annual charges due and payable under the agreement with the County were paid in full.

Upon the death of the incompetent, the substituted trustee qualified as administrator of the personal estate of the deceased, and has administered it as far as he can go until this case is decided. The balance of the estate, after the payment of administration costs and other expenses, amounted to $4,465.39. On June 1, 1959, the Department made a claim for $7,423.25 against the estate for the balance claimed to be due on account of the maintenance and support of the incompetent while he was hospitalized (from 1947 through 1958) at Springfield. When the claim was disputed the Department sued the administrator. There is no dispute as to the per capita rate (ranging from $30 in 1947 to $116 in 1958) set forth in the claim. When the trial court entered a judgment for the full amount of the claim, the administrator appealed.

Prior to the making of the agreement between the original trustees and the County, what is now sec. 5 (a)[1] of Art. 59,

---

1. See 1959 Cumulative Supplement.

*supra,* provided in effect, among other things, that the County Commissioners should investigate the financial condition of an incompetent committed to a State mental hospital as well as the financial conditions of his relatives [the father and mother of the incompetent in this case] or other persons [the trustees of the incompetent in this case] legally chargeable with his maintenance and support in order to determine the ability of such person, or his relatives, or other persons, "to make payment, in whole or in part, for the maintenance and support of such person while an inmate of any such institution." The statute further provided that if the County Commissioners should determine that payment should be required of any of them, then, "they [the County Commissioners] shall make and issue an order to that effect, and shall specify therein the amount of such payments so to be made, and the times when the same are to be made, and shall have the power to require the relatives of any such * * * [incompetent] or others legally chargeable with his * * * maintenance and support, to enter into appropriate and binding agreements with respect to the making of such payments, and from time to time may modify or change the terms thereof, as circumstances may justify." So far as this case is concerned—other than to substitute the Department of Mental Hygiene for the County Commissioners—the only effect of the amendments made by Chapter 69 of the Acts of 1958 and Chapter 9 of the Special Session of March, 1958, was to provide, by way of an exception, that for all "patients who have been or shall remain in such institution for a period in excess of thirty (30) months, the [fixed annual per capita] rate chargeable to the family of the patient shall thereafter not exceed 25% of the per capita cost."

Moreover, other than to add the words which we have italicized at the end of the following quotation, there was no amendment in 1958 of what is now sec. 5 (e)[2] of Art. 59, *supra,* which reads as follows:

> "Upon the death of any person committed to any of the said institutions * * *, the Department of

---

2. See 1959 Cumulative Supplement.

Mental Hygiene shall be entitled to make claim against the estate of any such person for his * * * maintenance and support while in such institution, or for the balance due therefor if part has been paid. Such claim shall constitute a preferred claim against the estate of any such person, and all claims arising hereunder against the relatives and other persons legally chargeable with the maintenance and support of such inmates, shall constitute preferred claims *against the estate of the person committed."* (Emphasis added.)

It is with this sec. 5 (e) that we are primarily concerned on this appeal.

The administrator in effect contends (i) that the agreement made by the original trustees with the County (a) is such a contract as is entitled to constitutional protection against infringement or impairment by subsequent legislation and (b), the trustees having paid in full all of the annual charges in accordance with the terms of the agreement, the Department is now without authority to make any additional claim upon the estate of the incompetent in excess of the original charges agreed to be paid; (ii) that the claim, being a debt and not a specialty, is partially barred by the three-year limitations period; and (iii) that under the provisions of Sec. 5 (a), *supra,* as amended, the claim should not exceed 25% of the annual per capita costs since the incompetent had been confined in the institution for a period in excess of thirty months.

(i). Agreement Between Trustees And County.

At the outset, we think we should observe, since the agreement between the original trustees and the County is not in the record, that the agreement to pay $125 a year for the maintenance and support of the incompetent must have been the result, first, of an order issued by the County specifying not only the amount but the times when such payments were to be made; and, secondly, must have been the result of a requirement that such trustees should enter into an appropriate and binding agreement to make such payments. Furthermore,

since other pertinent parts of what was then Sec. 4 of Art. 59 of the Code of 1939 necessarily had a bearing on the agreement, they too must be read into and become a part of any agreement made under the provisions of the statute. *Globe Slicing Machine Co. v. Murphy,* 161 Md. 667, 158 Atl. 26 (1932) [general rule is that subsisting laws enter into and form part of contract as if expressly referred to or incorporated in terms, and this rule embraces alike those which affect its validity, construction, discharge and enforcement], cited in *Griffith v. Scheungrab,* 219 Md. 27, 146 A. 2d 864 (1958). Here, there was a statutory provision that the agreement was subject to modification and change from time to time. There was also the statutory provision that upon the death of the incompetent a preferred claim could be made against his estate for his maintenance and support—or for the balance due if part had been paid—while he had been confined in the institution.

Specifically, with respect to this first contention, there is absolutely no basis for the claim that the agreement was infringed or impaired by subsequent legislation. If and when the first and last paragraphs of sec. 4 of Art. 59 of the Codes of 1924, 1939 and 1951 are compared with sec. 5 of Art. 59 of the Code of 1957 it appears that there has not been a substantive change in what is now sec. 5 (a) and (e) of Art. 59 in the 1959 Cum. Supp., since the enactment of the statute as Ch. 566 of the Acts of 1916 (including the re-enactments thereof by Ch. 65 of the Acts of 1937 and Ch. 685 of the Acts of 1949).

In 1940 the statute, as it does now, in addition to requiring that his maintenance and support should be paid by those chargeable therewith so long as the incompetent was institutionalized, also specifically provided that upon his death his estate should be liable for any remaining unpaid balance due therefor. It is for this reason that the contention that the Department is now without authority to make a claim for the balance due against the estate of the incompetent is likewise without merit. We conclude that the legislative intent is manifest. Not only was there a clear intention to require those, who are able to pay, to do so to the extent they are able, but

it is just as clear that there was no intention to confine the liability thus imposed to such payments as were made by the trustees during the lifetime of the incompetent, when, as in this case, the *net* estate remaining in the hands of the administrator is available to pay a substantial part of the preferred claim of the Department. *Thompson v. State Hospital of Arkansas,* 208 Ark. 970, 188 S. W. 2d 503 (1945). Furthermore, the initial inquiry into the ability of the trustees to pay and the resulting agreement based on a finding of such ability did not foreclose the right of the State to reimbursement from the estate of the incompetent for the per capita cost of his maintenance and support while he was hospitalized. *State v. Ikey's Estate,* 84 Vt. 363, 79 Atl. 850 (1911).

We think there is no doubt that the purpose of the provisions of sec. 5 (e), *supra,* was to make it clear that the maintenance and care of one who is mentally incompetent was not intended to be an unconditional gift, but was based instead on the expectation of future reimbursement, upon the death of the incompetent, if the circumstances should then permit it. *South Carolina Mental Health Comm. v. May,* 226 S. C. 108, 83 S. E. 2d 713 (1954). Cf. *Waxter v. Mindel,* 200 Md. 367, 89 A. 2d 599 (1952) [recovery of old age assistance]; *Webb v. City of Baltimore,* 179 Md. 407, 19 A. 2d 704 (1941) [recovery of charges for hospital maintenance paid by City to State]. Also compare *State v. Security Central Nat. Bank of Portsmouth,* 137 N. E. 2d 158 (Ohio App. 1955).

## (ii). Limitations.

Regardless of whether the period of limitations was three years or twelve, there is no problem here for the simple reason that limitations did not begin to run until the death of the incompetent, since that is the time when the statute provides that such claims shall be made.

## (iii). Reduction In Amount Of Claim.

The contention here is that the estate of the incompetent was not liable for more than 25% of the "board and keep" of the incompetent after the first thirty months he had been confined in a mental hospital of this State. We do not agree. This claim is based, of course, on the *exception* which was

added to sec. 5 (a), *supra*, by one of the 1958 amendments, to the effect that after the thirty-months period referred to "the rate *chargeable to the family of the patient* shall thereafter not exceed 25% of the per capita cost." [Emphasis added.] But, as we read the amendment, the reduction in the rate was intended to relieve the burden on the "family" of the incompetent only [the father and mother in this case] and has no application when the incompetent, or his legal representative, is chargeable with his maintenance and support. Whether or not the reduction would apply had the family, and not the trustees, been chargeable in the instant case and whether or not the amendment is retroactive, are questions we do not reach on this appeal.

For the reasons herein stated the judgment must be affirmed.

> *Judgment affirmed, the costs of this appeal to be paid out of the estate of the incompetent.*