The Indiana, Bloomington and Western Railway Co. *v.* Adamson *et al.*

No. 12,769.

## THE INDIANA, BLOOMINGTON AND WESTERN RAILWAY COMPANY *v.* ADAMSON ET AL.

PARTIES.—*Joint Contract.*—*Surviving Obligees May Sue.*—Surviving obligees may bring an action on a joint contract without joining the heirs or representatives of a deceased obligee, the common law rule vesting the whole right in the survivors not being changed by the code of civil procedure, and hence such persons are the real parties in interest.

CONTRACT.—*Breach.*—*Damages.*—A party who fails to perform an act which he has agreed to perform is liable for all injuries that naturally and proximately flow from the breach, the result to be reached by taking into consideration the contract and attendant circumstances.

SAME.—*Agreement to Construct River Embankment.*—*Freshets and Floods.*—Where a person agrees to construct and maintain a river embankment, and the circumstances show that the parties intended that the embankment should be so maintained as to prevent overflows, and so that it might be used as a roadway, the promising party is answerable for the consequences resulting from freshets and floods.

SAME.—*Unforeseen Obstacles.*—A party who agrees to construct and maintain a culvert at a designated place must make it reasonably effective for the purpose it is intended to accomplish, although accident or natural causes may make the work more difficult and expensive than it was supposed it would be.

PRINCIPAL AND AGENT.—*Evidence of Agency.*—*Declarations of Agent.*—The relation of principal and agent may be established by circumstantial evidence, and proof that one openly acted as the agent of another, under such circumstances as implied knowledge on the part of the latter, makes a *prima facie* case, and authorizes the admission in evidence of his declarations.

From the Fountain Circuit Court.

*C. W. Fairbanks*, *T. F. Davidson* and *O. Gresham*, for appellant.

*L. Nebeker* and *H. H. Dochterman*, for appellees.

ELLIOTT, J.—The appellees describe in their complaint a tract of land owned by them and Nellie Adamson in October, 1880, and allege that they and Nellie Adamson entered into

a contract with the appellant. The statement of the contract—not a clear one—is as follows, viz. :

" That they (the plaintiffs) should execute to the defendant a quitclaim deed for a strip of land out of said land one hundred feet wide and four hundred and thirty-five feet long, and permit the defendant to construct and extend an embankment from its then terminus over said land in an easterly direction until it should meet with and intersect with the west end of said bridge, and release said defendant from all damages that should accrue to them on account of the said embankment or the overflow of water. In consideration of which the defendant agreed to maintain its road so the plaintiffs could have the benefit of the same, pay plaintiffs and said Nellie Adamson one hundred dollars, and construct and maintain in and through the said river embankment enclosing said land a good and sufficient stone box culvert, the hole of which should not be less than two feet wide by four feet high ; that the same should be constructed in a reasonable time and at the point designated by the plaintiffs, and should be so constructed that it would be sufficient to carry off and permit the escape of the overflow water on said land well and sufficiently then and in the future; and it was further agreed by the defendant that the plaintiffs and Nellie Adamson should have a passage-way along said embankment along the river at the east end of the fill, so to be made by the defendant, the bottom of which was not to be lower than the high-water mark of said river. And it was further agreed by the defendant that the river embankment was to be left unimpaired except wherein it was cut or removed by putting in said culvert."

It is averred that the plaintiffs and Nellie Adamson did execute a quitclaim to the defendant, and fully performed their part of the contract, and that Nellie Adamson has since died. It is also averred that the defendant did not perform its part of the contract, but, in violation of the provisions

thereof, tore down the river embankment, and has failed to put in a stone box culvert.

The appellant contends that its demurrer to the complaint on the ground of a defect of plaintiffs is well taken, because neither the heirs nor the representatives of Nellie Adamson are made parties to the action.

In answer to the appellant the counsel for the appellees assert that, as the contrary does not appear, it must be assumed that the heirs of Nellie Adamson are parties. This position is not tenable. The complaint does not profess to assert a right in any of the plaintiffs as the heirs or representatives of Nellie Adamson, but proceeds exclusively on the theory that the cause of action is in them in their own right. They sue as in the right of the original contracting parties, and not in the capacity of heirs or representatives of a deceased party. It can not, therefore, be inferred in aid of the complaint that the heirs or representatives of Nellie Adamson are parties to this action. This inference can not be made without assuming that the plaintiffs sue in a different capacity from that which they themselves profess, and this assumption can not be justly made.

It is a familiar rule of pleading that a demurrer admits only such facts as are sufficiently pleaded, and it is quite as well settled that facts must be directly averred, and not pleaded by way of recital. *Jackson School Tp.* v. *Farlow*, 75 Ind. 118.

There is no direct allegation that Nellie Adamson was the wife of John M. Adamson, although, in a deed set forth in the complaint, that fact appears by way of recital. But a recital in an instrument not the foundation of the action is not the allegation of a traversable fact. It is, indeed, very doubtful whether a recital of the character here under discussion would be sufficient even if found in an instrument on which the pleading was based; but, however this may be, it is quite clear that it can not be regarded as sufficient when contained in a mere collateral instrument. This conclusion

The Indiana, Bloomington and Western Railway Co. *v.* Adamson *et al.*

excludes from the discussion the authorities which bear upon the question of the right of a husband as the survivor of his deceased wife to maintain an action for injuries to property jointly owned by them.

Authorities declaring the rule in cases of partnership are not of controlling force. The rules which apply to contracts with partners rest upon essentially different principles from those which govern cases of joint contracts. The rights of partners are in many respects very different from those of joint obligees. The relations of the partners are different, and the rules which govern actions brought by them, or against them, are not the same as those which obtain where parties are united in a joint obligation, and not associated in a partnership. We exclude, as without controlling force, although they may be remotely analogous, the authorities which govern actions brought by surviving partners.

The process of elimination which we have pursued trims the case down to the question, whether, under the code of civil procedure, the survivors may bring an action on a joint contract without joining the heirs or representatives of the deceased obligee. That they might have done so at common law is indisputable. Dicey Parties to Actions, top p. 149. If the code has not changed the rule they may still do so.

The question with which we have to deal is important, and not entirely free from difficulty, but, after the most careful study we have been able to give the subject, we feel bound to hold that the code does not change the common law rule. The question goes back of the procedure and takes up the element of the right itself. The right, the statute does not profess to change; it reaches only the remedy. In the case of a joint contract the whole right—the unified interest—vests in the survivors. Upon them falls the entire right. If they do possess the entire right, then they are the real parties in interest, since it is inconceivable that if they do possess the entire right any other person can be a real

party in interest. The principle of the common law vesting the whole right in the survivors is not changed by the code, and so long as the principle remains unchanged the persons possessing this entire right must be regarded as the real parties in interest. It requires legislation to 'abrogate a rule of law, and the courts can not assume the functions of the Legislature.

Mr. Pomeroy, who has as strongly as any one urged a liberal construction of the code and an extension of its provisions, affirms that the common law principle has not been abrogated. In discussing this question he said : " In actions *ex contractu*, all the persons having a joint interest must be made plaintiffs, and, when one of them dies, the action must be brought or must proceed in the names of the survivors ; the personal representatives of the deceased obligee or promisee can not be joined as co-plaintiffs ; and in the same manner, in actions *ex delicto* for injuries to personal property, all the joint owners must unite, and, if one of them dies, the action is to be prosecuted by the survivors alone. These common law rules remain in full force." Pomeroy Remedies, section 226.

We think it was competent to prove what it would cost to repair the embankment along the river. The appellant, in cutting through this embankment and failing to do the work properly and with reasonable care and skill, violated the contract made with the appellees, and must respond in damages. We regard it as settled law that a party who agrees to perform an act, and fails to keep his agreement, must pay compensation for all injuries that naturally and proximately result from the breach. The result is to be reached by taking into consideration the contract and attendant circumstances, for, as the books frequently say, a contract is to be read by " the light of the surrounding circumstances." It would be productive of confusion and injustice to take a contract and enforce it without regard to the situation of the parties and of the subject-matter. No rule of law of which we have any

The Indiana, Bloomington and Western Railway Co. *v.* Adamson *et al.*

knowledge will sustain such a course. A contract can not be isolated, and construed without regard to the circumstances under which it was made. Where a party agrees to construct and maintain a river embankment, or to do other work upon it, and the circumstances are such as show that it was the intention of the parties that the embankment should be so maintained as to prevent overflows, and so that it might be used as a roadway or the.like, the promising party is answerable for the consequences resulting from the action of freshets and floods upon the embankment.

It seems clear to us that, where such a contract is made, the parties must have had in contemplation such a probable result. There was, therefore, no error in permitting the appellees to prove the cost of repairing the break or hole in the river embankment.

It is urged that the questions asked the witnesses on this subject were in the present tense, and, therefore, had reference to the time of trial. But no such objection was stated to the trial court, and the objection can not be considered here, for, on appeal, only such objections are available as were specifically stated to the trial court.

The contract between the parties must receive a reasonable construction, and giving it such a construction it required that the appellant should put in the culvert in a reasonably careful and skilful manner, so that it will fairly accomplish the object the parties designed that it should do. While it is true that there was here no specific agreement to put back the dirt, yet that was unquestionably the duty of the appellant if it was necessary to a proper and reasonable performance of the work it had undertaken to do. Whether it was necessary, was a question to be decided on the whole evidence, and it could not be decided on an objection to the admission of testimony if there was any evidence fairly warranting the conclusion that it was a necessary part of the work which the appellant had undertaken to perform. *Pedigo* v.

*Grimes*, 113 Ind. 148. There unquestionably was such evidence.

One of the appellees' witnesses was asked this question: "How would a culvert have to be made over there at the locality mentioned in the complaint to endure the ordinary pressure of the water and be secure?" There was no error in overruling the objection of the appellant to this question. The stone box culvert contracted for was clearly intended by the parties to be one reasonably well suited to the purpose it was intended to accomplish. Where parties contract for such work it is understood as part of the contract that it shall be so placed and so constructed as to be reasonably well adapted to accomplish the purpose designed. We suppose it to be perfectly clear that the appellant had no right under the contract to construct a stone box culvert at such an elevation or angle as that it would be practically useless. What the parties contemplated was a culvert of the kind and dimensions specified, that would be reasonably well built and reasonably well adapted to accomplish what the parties expected it would accomplish if suitably located. Whatever was necessary to make a culvert of the kind and dimensions, complete and reasonably well adapted to the purpose designed, the contract bound the appellant to do. We think the learned counsel give the contract a much narrower construction than reason or precedent warrants. Our conclusion is, that the contract does bind the appellant to make the culvert reasonably secure, and, if to do this required a stone foundation, or any work of like nature, it was bound to do that work. It is never necessary that a party who contracts for a bridge, culvert, or the like thing, which he knows is intended for a designated place, should state at full length and in minute detail just what shall be done. The law, unless excluded by the terms of the contract, enters as a silent factor into every such contract, and binds the promisor to do the work with ordinary skill and care, so that when complete it shall be

ordinarily well adapted to the purpose for which it was intended.

The appellant, having agreed to construct and maintain a culvert at the place indicated, was bound to do so, and to make it reasonably effective for the purpose it was intended to accomplish, so that it is not excused although accident or natural causes may have made the work much more difficult than it was supposed it would be. It is seldom that a promisor is excused on the ground that the performance of his agreement is practically impossible, for the general rule is, that, having bound himself to do a thing not absolutely impossible in itself, he must do all incidental work necessary to make performance possible, even though it entail upon him work and expense not foreseen by him. Pollock Principles of Contracts, chapter vii.

We think it was competent for the appellees to prove that it was practically possible to construct a permanent culvert, although we doubt whether they did not, in attempting it, assume a greater burden than the law imposes upon them. But if they did, the appellant, at all events, has no cause of complaint.

We have no doubt that it was competent for the appellees to prove the consideration of the contract. We do not regard the question upon this point as outside of the issues.

We are inclined to agree with appellant's counsel that the answer to the question as to the ownership of property above the railroad was incompetent, but we can not agree that the question to which the answer was addressed was improper. Our opinion is, that it was competent for the appellees to prove the situation of the subject-matter of the contract and its surroundings, as well as their interest in adjoining property, and this is really all that the question called for. As there was no motion to strike out the answer, and as the question was not in itself improper, we can not hold that there was any available error. If, however, we are wrong in this, we

could not reverse, because it is apparent that the answer did the appellant no harm.

The relation of principal and agent may be established by circumstantial evidence. We think that the evidence shows, *prima facie*, at least, that Mr. Sherman was the chief engineer of the appellant, and as such had supervision of the construction of the culvert and the work connected with it. Whether he was or was not, in fact, the appellant's agent was a matter peculiarly within its own knowledge, and proof that he was openly acting in that capacity under such circumstances as implied knowledge on its part made a *prima facie* case, and entitled the appellees to give evidence of his declarations made while actually engaged in directing or supervising the work of constructing the culvert.

We accept as a substantially correct statement of the general rule counsel's assertion, that a plaintiff who does not use ordinary care to prevent the aggravation of damages can not recover for the increased loss which ordinary care might have prevented, but we do not understand that the rule requires the plaintiff to do the work that the defendant contracted to do. We do not believe that the rule required these plaintiffs to construct the culvert or to reconstruct the embankment, for that would compel them to do what the appellant had agreed to do. If the rule should be given a construction and application so broad as that claimed by appellant, it would reward the contract-breaker and punish the party who had paid him the agreed compensation.

Judgment affirmed.

Filed Jan. 24, 1888; petition for a rehearing overruled April 13, 1888.