SUPERIOR TRAILER MFG. CORP. *v.* J. W. SCATTERDAY,
INC. ET AL.

[No. 30,028. Filed October 4, 1962. Rehearing denied
January 3, 1963.]

*George B. Davis, Davis & Williams,* of counsel, of
Greenfield, *Michael L. Fansler, Bernard Stroyman*
and *Fansler, Fauvre, Dongus & Chambers,* of counsel,
all of Indianapolis, for appellant.

*Waldo Ging,* of Greenfield, *Richard Fulmer, Hugh
E. Reynolds, Jr., Hugh E. Reynolds* and *Locke,
Reynolds, Boyd & Weisell,* of counsel, all of Indianapolis,
for appellees.

ACHOR, J.—Heretofore this court by a written
opinion in *Superior Trailer Mfg. Corp.* v. *J. W.*

*Scatterday, Inc.* (1961), 241 Ind. 459, 462, 169 N. E. 2d
721, 722-723, made a general statement regarding the
factual circumstances in this case and determined that:

> "[U]nder the issues as formed by the pleadings
> and the evidence it was the duty of the trial
> court to make a specific finding upon the issue
> of completion of the contract, upon which find-
> ing the court could conclude, as a matter of law,
> that an indebtedness did or did not exist under
> the contract.
>
> "Therefore, under Rule 2-30, judgment herein
> is remanded back to the trial court for 'findings
> on the material issues of fact' as to the com-
> pletion of the contract which is the subject of
> this litigation, and for further proceedings con-
> sistent with this opinion."

Pursuant to the mandate of this court, the trial court
thereafter entered an additional finding of fact and
rendered judgment against the appellant upon all the
findings of fact and conclusions of law thus stated.
The additional finding of fact was stated as follows:

> "[A]nd the Court now being duly advised in the
> premises now, pursuant to the order and direction
> of the Supreme Court of Indiana in cause number
> 30028 in said Court ... makes and enters its
> additional finding of fact: No. 58. That J. W.
> Scatteray, Inc. immediately after the execution
> of the contract between it and Superior Trailer
> Mfg. Corp. on September 21, 1951 and the amend-
> ments thereto, entered upon the performance of
> said contract in accordance with the plans, speci-
> fications and modifications and that said J. W.
> Scatterday, Inc. substantially performed said con-
> tract in accordance with the plans, specifications
> and supplements thereto."

Thus, the trial court having entered a "finding" "that
said J. W. Scatterday, Inc. substantially performed
said contract in accordance with the plans, specifi-
cations and supplements thereto," the issue now pre-

sented for our determination as to whether such contract was in fact "substantially performed [with respect to its completion]" in a skillful and workmanlike manner, within the purview of the evidence and the finding of fact otherwise stated in the case.

As stated by the trial court in its Finding No. 14:

"14. That at and before the time the contracts above referred to were entered into and by said contracts the defendant, J. W. Scatterday, Inc., represented to the plaintiff that its president, John W. Scatterday, was a registered professional engineer and *qualified* builder and that said defendant was, through its president and employees, qualified to complete the building and do all of the construction work contemplated by said contracts and as designed by said John W. Scatterday, in a *skillful, careful and workmanlike manner*, and by its contract the defendant, J. W. Scatterday, Inc., agreed to furnish all the material contemplated and to do and perform all the work contemplated by its contract, plans and specifications in a *first-class workmanlike manner*." [Emphasis added.]

In this case the dominant issue related to the performance and responsibility of appellee Scatterday, with respect to the collapse of two major sections of the brick wall of appellant's original building, the material facts bearing upon this issue are as follows:

J. W. Scatterday, who was an experienced engineer and contractor, was familiar with the hazardous condition of the existing wall resulting from its deterioration and lack of lateral support. On Wednesday, December 5, 1951, Scatterday, who had previously submitted plans and specifications for the construction, entered into a contract to build a new and independent wall, immediately adjacent to and parallel with the original wall, the footings of which were expected to provide needed underpinning of the

original wall.[1] On Friday, December 7, immediately after entering into said contract, appellee Scatterday put in two 20 foot sections of footings, so designed as to serve as an underpinning for the existing wall, and a footing for the new wall. These footings were constructed by cutting away to the sheer perpendicular lines of the wall of the original building, to and including the digging of a trench to a depth of approximately eight inches below the grade for the spur track. Thus, the exposed earth formed the interior wall of the footing, and timbers about two feet in height were constructed to form the exterior wall. Into these forms concrete was poured. This method of construction proved successful on Friday, but was halted because of rain on Saturday and Sunday.

On Monday morning, December 8, a similar form was dug and constructed at the base of a three-story section of the building. At this time the earth was very muddy and water stood in a trench. On this occasion the building settled and the wall collapsed where this work was done. This happened while appellee was waiting for the cement to be delivered with which to fill the form. Thereafter, on the same day, appellee undertook to construct a second and similar 20 foot section of footing under a different part of the building, which part also collapsed before

1. J. W. Scatterday had discussed with appellant the matter of underpinning the original wall before entering into the supplemental contract of December 5, 1951. Under the primary contract of September 21, 1951, Scatterday was under contract to "install footings where necessary." Finding No. 15 of the court states:

"15. That paragraph 1 of the specifications provides as follows: 'FOOTINGS: All footings as required and necessary.'

"That the blueprints expressly provided for footings under all new walls and piers and that the above provisions had reference to such other incidental footings as might be required and necessary as the work progressed."

the form was completed and filled with concrete. Thereupon appellee Scatterday terminated his activity on the job until after appellant had reconstructed the collapsed portions of the wall and placed underpinning under the remaining portions of the wall. Because of this unfortunate experience additional cost was allegedly incurred in the approximate amount of $90,000. This is the primary subject of controversy in the case.

The appellant asked for special findings of fact and conclusions of law. Several findings of fact stated by the court demonstrate that its decision was based upon a clearly erroneous conception of both the law and the facts as they related to the important issue as to whether or not appellee Scatterday was negligent or lacking in skill in the manner in which he attempted to construct the footings at the base of the sections of the wall which collapsed.

In Finding No. 25 the court stated:

> "25. That prior to the time that said excavation was made for the spur track, proposals were made to underpin the existing walls of the Tucker Dorsey buildings by the defendant, J. W. Scatterday, Inc., and *rejected by the plaintiff*." [Emphasis added.]

The proposal to which this finding relates was made in conjunction with a proposal to build a new four inch cement block wall as a veneer to the old wall. The proposal was superseded by a new proposal made by Scatterday. *It was not* "rejected by the plaintiff [appellant]."

In Finding No. 31 the court stated:

> "31. That the plaintiff knew that the collapse of said walls was imminent and the change of the contract, plans and specifications of December 5th were made by the plaintiff and agreed to

by the defendant, J. W. Scatterday, Inc., in an attempt to prevent the collapse of the remaining east walls of the Tucker-Dorsey buildings; that said amendment provided for an independent and self-supporting West wall for the new building with independent footings, except the boiler room which was to be removed and a common wall erected."

The plans and specifications of the supplemental agreement made on December 5th *were not* "made by the plaintiff and agreed to by the defendant, J. W. Scatterday, Inc.," as stated in the finding. The reverse was true. They were made by Scatterday and agreed to by the plaintiff [appellant]. Thus, Scatterday, Inc., and not the appellant, assumed primary responsibility for the workability of the proposal. *Indiana, Bloomington and Western Railway* v. *Adamson et al.* (1887), 114 Ind. 282, 15 N. E. 5; *MacKnight Flintic Stone Co.* v. *City of New York* (1889), 52 N. Y. Supp. 747, 54 N. E. 661.

In Finding No. 33 the court stated:

"33. That immediately after the execution of the amendment to the contract and under the specific directions of the plaintiff, the defendant began the pouring of the footings adjacent to the east walls of the Tucker-Dorsey buildings where the support for the footings of the said walls of the Tucker-Dorsey building had been removed by the excavation for the spur track, and no objection was made in respect to *the manner in which it was to be done* but *was approved by the plaintiff*." [Emphasis added.]

Contrary to the court's finding, there is no evidence that "the *manner* in which it was to be done ... *was approved* by the plaintiff [appellant]." There is no evidence in the record that appellant did more than approve of the construction generally.

In Finding No. 35 the court stated:

"That no support for said walls of the Tucker-Dorsey Building was removed by J. W. Scatterday, Inc., *in the setting of the forms and the pouring of the concrete* footings for the west wall of said new building." [Emphasis added.]

This finding is contrary to all of the evidence unless it is given its most strict and literal construction. Naturally, neither the mere *setting* of the wooden forms nor the *pouring* of the concrete footings in themselves removed any support from the walls of the original building. However, this finding is contrary to all of the evidence, both direct and circumstantial, if it is intended to state that no support for the walls of the Tucker-Dorsey building was removed when the earth was cut away from the footings of that building in a sheer perpendicular line to a depth eight inches below the bottom of the excavation for the railway spur, for spans of 20 feet each.[2] The evidence is undisputed that the better practice would have been to install the footings in four or five foot sections instead of the 20 foot sections as appellee attempted to construct them.

---

2. The court's Finding No. 23 states:

"23. That after the signing of the amended contract of December 5th, the defendant, J. W. Scatterday, Inc., began excavating and installing forms for the pouring of concrete footings for the new independent wall. That excavations were begun at the south end of the Tucker-Dorsey buildings. That the earth adjoining said south building was cut away to the sheer perpendicular lines of the walls of that building and that a trench was dug by removing the earth to a depth of approximately eight inches below the bottom of the railway excavation and extending approximately to a line perpendicular from the walls of the Tucker-Dorsey buildings and extending approximately twenty feet north from the south line of the south Tucker-Dorsey building. That when said trench had been opened, carpenters installed wooden forms on the East side thereof and thereafter concrete was poured in said trench between said forms and the earth under the footings of the building to a height of twenty-four inches."

In Finding No. 42 the court stated:

"42. That the contract between the plaintiff and the defendant, J. W. Scatterday, Inc., did not, *in its written terms*, require the plaintiff to underpin, to shore up or to do anything with regard to the existing East walls of the Tucker-Dorsey building." [Emphasis added.]

It is not material "[t]hat the contract between the plaintiff and the defendant, J. W. Scatterday, Inc., did not, *in its written terms*, require the plaintiff to underpin, to shore up or to do anything with regard to the existing East walls of the Tucker-Dorsey buildings," as stated in the above finding. It was provided in the primary contract that Scatterday should install "all footings as required and necessary," as stated in Finding No. 15. Too, the duty to do so may have existed by reason of the precarious condition and immediate proximity of the old wall to the excavation made for the new.[3]

Furthermore, as stated by the appellee Scatterday, a "discussion had already taken place," with reference to underpinning the existing wall, prior to the execution of the supplemental agreement. Also, according to Scatterday's own evidence, Section 2801 of the Rules and Regulations of the Administrative Building Council of Indiana, provides in part as follows:

---

3. "The result is to be reached by taking into consideration the contract *and attendant circumstances*, for, as the books frequently say, *a contract is to be read by 'the light of the surrounding circumstances.'* It would be productive of confusion and injustice to take a contract and enforce it without regard to the situation of the parties and of the subject-matter. No rule of law of which we have any knowledge will sustain such a course. *A contract cannot be isolated*, and *construed without regard to the circumstances and under which it was made.*" [Emphasis added.] *The Indiana, Bloomington and Western Railway Co.* v. *Adamson, et al.* (1887), 114 Ind. 282, 286-287, 15 N. E. 5.

## "CHAPTER 28—EXCAVATIONS, FOOTINGS AND FOUNDATIONS

"Excavations

Sec. 2801. All excavations for buildings and excavations accessory thereto shall be protected and guarded against danger to life and property. ....No excavation for any purpose shall extend within one foot [1'] of the angle or repose or natural slope of the soil under any footing or foundation, *unless such footing or foundation is first properly underpinned or protected against settlement.*" [Emphasis added.]

It would appear from this finding of fact [No. 42] that the court misconstrued the law governing the case by assuming that appellees' responsibility for underpinning the east wall of the building was contingent upon a written agreement which expressly so provided.

Where it appears from the record that the court, in arriving at its decision, considered as established facts matters which were not sustained by the evidence and ignored other evidence material to the issue rather than weighing it, and misconstrued the principles of law bearing upon the issue, such decision is contrary to law. *Miller, etc.,* v. *Ortman, etc., et al.* (1956), 235 Ind. 641, 136 N. E. 2d 17; *Wertzberger* v. *Herd* (1957), 128 Ind. App. 85, 146 N. E. 2d 115. See: Acts 1903, ch. 193, §8, p. 338 [§2-3229, Burns' 1946 Repl.]; Acts 1881 (Spec. Sess.), ch. 38, §420, p. 240 [§2-2401, Burns' 1946 Repl.].

Judgment is, therefore, reversed with instructions to sustain appellant's motion for a new trial.

Arterburn, C. J., Bobbitt and Landis, JJ., concur.

Jackson, J., concurs n the result.

NOTE.—Reported in 185 N. E. 2d 417.