## DENICE *v.* SPOTSWOOD I. QUINBY, INC. ET AL.

[No. 55, September Term, 1967.]

*Decided January 8, 1968.*

The cause was submitted on the brief to HAMMOND, C. J., and HORNEY, BARNES, McWILLIAMS and FINAN, JJ.

Submitted by *Robert E. Bullard* and *Carmen D. Tidler* for appellant.

No brief filed for appellees.

FINAN, J., delivered the opinion of the Court.

Anthony G. Denice, appellant (plaintiff below), has appealed the judgment entered by Judge Mathias, presiding without a jury, in the Circuit Court for Montgomery County, in favor of Spotswood I. Quinby, Inc. (builder) and Spotswood I. Quinby, appellees (defendants below), in a suit arising out of an alleged breach of contract dated May 14, 1965, wherein the builder promised to construct and sell to the appellant a residence in fashionable Arrowood, Montgomery County, for the purchase price of $95,000, with occupancy on or before September 1, 1965. The plans and specifications were appended to the contract; however, before signing the contract the builder agreed to finish a large recreation room in the basement complete with fireplace and bookshelves, all to be included in the purchase price. There was no express language in the contract making time of the essence, however, the lower court assumed, and the parties apparently agreed, that settlement date was intended to be September 1, the date set for occupancy.

In August it became apparent that the home would not be ready for occupancy by September 1. The appellant having sold his own home was in need of a place of residence, and on August 30 the parties entered into an agreement whereby the builder furnished the appellant with a temporary residence on the same street in the same subdivision as the dwelling under construction. At the execution of the contract, on May 14, the appellant paid to the builder a $5,000 deposit, and again on August 30 the appellant paid another $5,000 on the purchase price. It was agreed that the appellant would occupy the temporary residence until the completion of the dwelling which would be considered completed at such time as the Perpetual Building Association, the construction money mortgagee, gave its final approval. As of this time the parties were still enjoying an amicable relationship, a "Tony" and "Spots" rapport existing between them.

While visiting the premises on September 18 and 19, the appellant inspected the work in the recreation room where the carpenters were in the process of putting in the ceiling. One of the carpenters made the wry but apt remark to the appellant, "I hope you have short friends." The appellant contends that this was the first time he noticed how low the recreation room ceiling was because on other occasions when he entered the room it had been in darkness. The height of the recreation room measured between 6 feet 8 inches and 6 feet 9 inches. The contract was silent as to the height of the recreation room, and the plans showed only a rough basement, the distance between the basement slab and the finished floor above being 8 feet 8 inches. On September 27 the appellant, through his attorney, wrote the builder complaining of the height of the recreation room, calling attention to the fact that it was "only 6 feet 9 inches from floor to rafter. Section 501 of BOCA Code requires not less than $7\frac{1}{2}$ feet. This is a rather serious problem which I believe you should immediately seek to rectify." The reference was to the relevant section of the Building Officials Conference of America Basic Building Code, which by Ordinance No. 4-123 (adopted February 6, 1962), became the Montgomery County building code. See Montgomery County Code, § 79-1 (1965).

By a letter dated September 20, the builder had called for settlement on October 4 at 2:30 p.m. at the office of his attorney. Mr. Quinby was present for settlement but the appellant did not appear. Negotiations continued for several more days, without success. During these negotiations the appellant was advised by the builder that it had another offer for the purchase of the home in the amount of $100,000, less a $5,000 realtor's commission and that this offer had to be accepted or rejected by October 18, 1965, at 5 p.m. The appellant refused to go to settlement and on October 8 the builder sent the appellant a letter notifying him that the contract was considered breached by him and his deposit of $10,000 forfeited, the contract providing for forfeiture of deposit in the event the purchaser failed to make settlement.

On November 17, 1965, the appellant filed suit against the appellees, the declaration setting forth two counts. The first

count was against the builder corporation on the grounds that it did not complete the premises until after October 7 "* * * and more particularly the finished recreation room in the basement did not conform to the County Building Code * * *." The second count was against Mr. Quinby, individually, on the ground that he falsely represented that the house would be ready for occupancy by September 1, 1965. The appellant claimed damages in the amount of $15,000 on each count.

The builder filed a counterclaim for $20,000; of this amount $10,000 represented the forfeiture under the contract and $10,-000 alleged extras.

The lower court found for both defendants in the suit brought by the appellant against the builder and Quinby, and in favor of the appellant in the counterclaim brought by the builder. No appeal was taken from the court's decision in the counterclaim. Our concern therefore is with the decision of the court in the suit brought by the appellant against the builder and Quinby.

We agree with the lower court in its finding there was no merit to the appellant's suit against the appellee, Spotswood I. Quinby, the individual, set forth in the second count of the declaration. Judge Mathias stated in his opinion:

"In his second count, Mr. Denice claims damages of Mr. Quinby, individually, on the ground that he, knowingly, misrepresented that the house would be ready for occupancy by September 1: This is essentially a fraud count, and we don't think the evidence comes close to proving deliberate misrepresentation on the part of Mr. Quinby. Assuming that it did, however, plaintiff has lost his right to sue on this ground because on August 30 he entered into an agreement with Spotswood I. Quinby, Inc., whereunder he was furnished with a temporary residence at 9120 Kittery Lane, rent free, until completion of the house he was buying and whereunder he agreed that the house he was buying would be considered to be complete at such time as Perpetual Building Association gave its final approval. It is obvious, therefore, that no cause of action was proven under Count Two."

However, we are in disagreement with the lower court's decision with regard to the appellant's cause of action against the builder, Spotswood I. Quinby, Inc., set forth in count number one. The lower court in finding for the builder at the expense of ignoring the clear language of the building code, placed considerable store in the fact that the construction was approved by the building inspector for Montgomery County. The court concluded:

> "The 6 foot 8 inch high recreation room ceiling, although most undesirable to Mr. Denice, was not in breach of any agreement which Mr. Denice had with the defendant corporation, nor did its construction violate any law. Consequently, it was Mr. Denice who breached the contract by refusing, without just cause, to make settlement with Quinby, Inc."

We think that compliance on the part of the builder with Section 501 of BOCA Basic Building Code, the building code for Montgomery County, was an implied condition of the contract entered into between the appellant and the builder dated May 14, 1965. When the builder failed to comply with Section 501, with respect to the height of the recreation room ceiling, it was in default, and the appellant was justified in refusing to accept the premises and make settlement.

There is a paucity of cases in Maryland on the question of integration of terms or provisions in a contract by force of a statute or ordinance. However, the cases decided by this Court, as well as numerous decisions from other jurisdictions would hold that compliance with the Montgomery County Building Code was an implied condition of the contract in the instant case.

A general statement of the law applicable is found in 17A C.J.S. *Contracts* § 330 (1963):

> "Generally, unless a contract provides otherwise, the law applicable thereto at the time and place of its making, including constitutional and statutory provisions and judicial precedents, is as much a part of the contract as though it were expressly referred to and incorporated in its terms; and the same is true of the

law of the place where it is to be performed. The reason for this rule ordinarily is that it is presumed that the parties had such law in contemplation when the contract was made."

* * *

"*Municipal ordinances* have been held to come within the rules just stated."

Professor Williston discusses this general principle of law at length in 4 Williston, *Contracts* § 615 (3d ed. 1961), citing numerous cases in which the rule has been applied and discussing at length the case of *Schiro v. W. E. Gould & Co.*, 165 N. E. 2d 286 (Ill. 1960). This case involved a contract for the purchase of land and a building which the vendor was to construct. The vendor failed to provide a separate sewerage system for the building and tied the sewerage drains into the system of a neighboring lot. The contract was silent as to plans and specifications for the sewerage system, however, the City Code of Chicago required a separate sewerage system for each building. The Supreme Court of Illinois, in reversing the lower court which had dismissed the purchaser's bill of complaint, stated:

"Applying this established law to the *instant case*, it is evident that the contract to purchase the land and building to be constructed by defendants included, as an integral part, the relevant provisions of the city code in existence at the time the contract was executed. The requirements of that code were, therefore, as much a part of the contract as if they had been enumerated by the parties.

"The code provided, in substance, that the drainage and plumbing system of each new building shall be separate and independent of that of any other building, and that there be an independent connection with a public or private sewer; * * *.

* * *

"These violations of the city code were tantamount to a breach of contract." 165 N. E. 2d at 290, 291.[1]

---

1. The Court notes that Professor Corbin disagrees with the rule that existing laws impliedly form part of the terms of the

In *Shimek v. Vogel,* 105 N. W. 2d 677 (N. D. 1960), the plaintiff constructed a building for the defendant and sued for extras amounting to $4,650 above the contract price and also for the last payment on the principal sum of the contract which was $48,430. The extras included steel fabricated to a greater strength than that specified by the contract. In disallowing the extras covering the structural steel work, the Court said:

"The expense for these items was incurred by reason of the mistake of the plaintiff himself. He ordered the structural steel from the Fargo Foundry and apparently did not specify the weight-bearing capacity of 40 pounds per sq. ft. which was required under the city ordinances of Bismarck and the steel sent from the Foundry and which was installed by plaintiff was of a weight-bearing capacity of 30 pounds per sq. ft. The city officials of Bismarck required heavier steel or additional steel support and side stress support (angle iron) to be installed. There was an implied agreement on the part of the contractor under his contract to comply with the ordinance.

'Every contract is made with reference to, and subject to, existing law, and every law affecting the contract is read into and becomes a part of the contract.' McWilliams v. Griffin, 132 Neb. 753, 273 N. W. 209, 214, 110 A.L.R. 1039; Long v. Owen, 21 Idaho 243, 121 P. 99, Ann. Cas. 1913D, 465.

"City ordinances are held to come within the rules just stated. 17 C.J.S. Contracts § 330." 105 N. W. 2d at 682.

See also *Economy Fuse & Mfg. Co. v. Raymond Concrete Pile Co.,* 111 F. 2d 875, 878 (7th Cir. 1940); *Monson v. Fischer,* 5 P. 2d 628, 633 (Cal. 1931); 91 C.J.S. *Vendor and Purchaser* § 111 (1955).

---

contract. See 3 Corbin, Contracts § 551 (1960). It is his view that existing statutes form a part of the circumstances surrounding the contract and that it should be interpreted in light of such circumstances. See also discussion of Schiro v. W. E. Gould & Co., at p. 199.

The case of *Moale v. Baltimore*, 56 Md. 496 (1881), cited by the appellant as coming within the rule that the laws which subsist at the time and place of making of a contract enter into and form a part of it, as though expressly referred to or incorporated in its terms, falls somewhat short of accomplishing this purpose, however it is helpful. In *Moale,* the plaintiff leased certain property to Feutrier and his assigns for a term of five years. The lease expressly provided "That if the city authorities shall require the removal of the buildings to be erected on the aforesaid lot, or if said buildings shall be removed by legal process, in those cases, this lease shall be null and void from the date of such removal." Feutrier erected wooden structures for a riding academy; later he mortgaged his interest to White, and at a subsequent mortgage sale Duffy, one of the appellees, bought the buildings. After receiving complaints from the neighborhood, the City Council revoked Feutrier's permit and notified Duffy to remove the buildings within 60 days pursuant to Article 7, § 30 of the Baltimore City Code (1879), which provided that permits for the erection of frame sheds could be revoked at any time on the giving of 60 days notice. Moale sought to enjoin Duffy from removing the sheds. This Court in refusing Moale's requested injunction said:

> "The contract between them was made with a view to the then existing Ordinance on the subject, and its validity and binding force was not only acknowledged by them, but formed part of the agreement." *Id.* at 499.

The case is helpful in this respect, that although the ordinance was not specifically referred to, the Court incorporated it into the contract. However, it was obvious that the parties to the contract were aware of the ordinance and from the language used in the contract were contemplating the possible effect of the ordinance on its subject matter.

In *Griffith v. Scheungrab,* 219 Md. 27, 146 A. 2d 864 (1958), Judge Hammond (now Chief Judge) reaffirmed the general principle of law applicable in Maryland. This case involved a contract for the purchase of real estate which contemplated the financing of the purchase through a FHA mortgage. This Court

held that under FHA regulations existing at the time of the execution of the contract, a certificate of value had to be obtained from the office of the Federal Housing Commissioner, and although the contract made no mention of such a condition, there could be no breach for failure to perform on the part of the purchaser until the certificate had been forthcoming. Judge Hammond paraphrased the general rule in the Court's opinion:

> "It is a familiar principle often applied in the cases that '* * * the laws which subsist at the time and place of making a contract enter into and form a part of it, as if they were expressly referred to or incorporated in its terms; and this rule embraces alike those which affect its validity, construction, discharge and enforcement.' *Brown v. Smart,* 69 Md. 320, 330; *Globe Slicing Machine Co., Inc. v. Murphy,* 161 Md. 667, 671. It is not necessary to determine how far this broad statement would be applicable and controlling in various contexts and situations. See 3 Corbin, *Contracts,* Sec. 551." *Id.* at 33, 146 A. 2d at 867.[2]

In the instant case the appellant was paying $95,000 for his home, a substantial sum by any standard. It is logical to assume that he intended to spend an appreciable amount of time in this recreation room which was being equipped with a fireplace and bookshelves. Judge Mathias, with consent of counsel, visited the residence and inspected the recreation room. In his opinion he stated, "The expanse of ceiling gave the impression of being extraordinarily low but not to the point where the room was unusable." We do not think that usability was the test to be applied. The dwelling was not being constructed for Lilliputians. The ordinance specified $7\frac{1}{2}$ feet for "habitable" rooms; there has been no contention raised that the recreation room was not intended by all parties to be a "habitable" room.

For the reasons stated we are of the opinion that appellant was justified in his refusal to consummate the purchase of the

---

2. See also, Prince George's Club v. Carr, Inc., 235 Md. 591, 607, 202 A. 2d 354, 362 (1964); Holmes v. Sharretts, 228 Md. 358, 367, 180 A. 2d 302, 306 (1962); Whitworth, Adm'r v. Department, 222 Md. 98, 104, 158 A. 2d 765, 768 (1960).

dwelling because of the builder's failure to comply with the building code which we hold to be an implied condition of the contract. We do not intend this opinion to be construed as holding that any failure to comply with the provisions of a building code will excuse performance of the contract by the complaining party. However, where the noncompliance is substantial, as in this case, we think non-performance is justified. We are further of the opinion that the builder should refund the $10,000 deposit to the appellant; since the appellant filed suit to recover money paid in excess of the deposit, as well as the deposit, it therefore becomes necessary to remand the case for a new trial to afford the appellant opportunity to prove that portion of his claim in excess of the deposit should he choose to pursue the recovery of this excess amount; in any event the lower court should enter judgment in favor of the appellant (plaintiff below) in an amount not less than $10,000, representing his deposit.

> *Judgment reversed and case remanded for proceedings consistent with this opinion, appellee, Spotswood I. Quinby, Inc., to pay costs.*