ETHYL CORPORATION and Capitol Products Corporation, Appellants (Defendants and Counter-claimants below),

v.

FORCUM–LANNOM ASSOCIATES, INC., Appellee (Plaintiff and Counter-defendant below).

No. 3–181A7.

Court of Appeals of Indiana, Fourth District.

April 20, 1982.

Rehearing Denied June 3, 1982.

Stephen Bower, Kentland, for appellants.

George Vann, Barce, Vann & Ryan, Kentland, for appellee.

MILLER, Presiding Judge.

Appellant Ethyl Corporation and its subsidiary Capitol Products Corporation (owner) are appealing a judgment in favor of appellee Forcum-Lannom Associates, Inc. (builder) which enforced the builder's mechanic's lien, and awarded it $34,500 in damages, plus prejudgment interest and $17,505 in attorneys' fees. The owner claims the trial court erroneously entered judgment in favor of the builder on his complaint and against the owner on his counterclaim by: 1) failing to find the contract required the builder to construct the building addition in question in compliance with state building code regulations; 2) allowing prejudgment interest; and 3) awarding excessive attorneys' fees. We find the contract specifically obligated the builder to construct the addition in accordance with the building code regulations; thus we reverse and remand for a new trial on damages only. Because of our disposition of the appellant's first issue we need not address the other two; prejudgment interest and attorneys' fees for the builder were contingent upon judgment in his favor.

### FACTS

In the fall of 1977 appellant owner desired to build an addition to his Capitol Products plant in Kentland, Indiana, and to that end contacted appellee builder. On December 22, 1977 the parties executed a written contract whereby the builder would "design and construct" an approximately 45,000 square foot addition to the plant for a sum in excess of $667,700. The contract called for the removal of the west wall of the existing building, resulting in a single, undivided building whose approximate size was in excess of 100,000 square feet. The transaction proceeded without incident until February 17, 1978 when the Indiana State Fire Marshal wrote to the builder and informed him that the builder's plans and specifications for the project did not comply with all required rules and regulations, specifically, that the building "shall have smoke and heat vents ... in accordance

with Sec. 3205, UBC 1973," and "an annunciator panel in accordance with Sec. 3113–E, UBC 1973."[1] The contract was silent with respect to the vents and annunciator, but the "Scope of the Work" section did specifically obligate the builder to "install an ordinary hazard wet sprinkler fire protection system" in the addition. However, the agreement also provided the "CONTRACTOR . . . shall be responsible for all work which is implicit or accessory to this Scope of Work whether or not such work is expressly called for . . . [a]ll work . . . shall be in conformance with all current and applicable codes, rules, regulations, and standards." Furthermore, the "General Conditions" section of the contract explicitly stated:

> "[t]he Contractor shall give all notices, comply with all laws, ordinances, rules and regulations bearing on the Work. The Contractor agrees to indemnify and hold Owner harmless from any loss, liability or penalty which might be imposed by reason of asserted or established failure of the Contractor or its employees or agents and/or its subcontractors and/or their employees or agents to comply with any applicable laws, ordinances, rules or regulations."

For several months both parties disputed their contractual liability to pay for the vents and annunciator panel required by the Fire Marshal, until the owner informed the builder, in a letter dated October 10, 1978, that it was going to withhold $34,500 of the contract balance as the estimated cost of engineering, buying and installing the additional equipment for the addition.

After filing its notice to hold a mechanic's lien, the builder brought suit to foreclose the lien, seeking $34,500 in damages plus interest and attorneys' fees. The owner filed a counterclaim in which he alleged the builder breached their contract by failing to place the addition in compliance with the building regulations; the counterclaim sought $47,642 in direct and consequential damages. Following a bench trial, the trial judge entered findings of fact and conclusions of law which stated in relevant part:

> "the contract here involved may not reasonably be construed to require the builder (Forcum-Lannom) to pay for and install smoke and heat vents and an enunciator [sic], which are required to be installed in buildings in excess of 50,000 square feet when the plaintiff in this case clearly contracted to build an addition which consisted in floor area of approximately 45,000 square feet."

> . . . .

> "Moreover, it is a cardinal rule of construction that legal documents will be strictly construed against its author [sic]. Likewise, it is not incumbent upon the non-drafting party (in this case Forcum-Lannom) to demonstrate that its version of the contract terms is the only reasonable interpretation that can be made, since an interpretation of a contract against a party who prepared the instrument is preferred where different interpretations are possible or where ambiguities are present."

> . . . .

> "Business contracts must be construed with business sense, as they naturally would be understood by intelligent men of affairs. The plaintiff in this case ought not to be required to furnish and install the costly items involved in this dispute when neither the *scope of work*, plaintiff's bid proposal, nor any other contract document specified that they be furnished."

1. "UBC" refers to the Uniform Building Code which, apparently, was applicable in this case by virtue of the Administrative Building Council of Indiana regulations found at Ind.Admin. Rules & Regs. (22–11–1–10)–A12 (Burns Code Ed.) (repealed) and Ind.Admin.Rules & Regs. (22–11–1–10)–A33 (Burns Code Ed.) (repealed). Ind.Code 22–11–5–6 makes it the duty of the State Fire Marshal to enforce all laws of the state, including local laws, which provide for the prevention of fires.

The IEEE Standard Dictionary of Electrical and Electronics Terms (1972) defines an "annunciator" as: "a visual signal device consisting of a number of pilot lights or drops, each one indicating the condition that exists or has existed in an associated circuit, and being labeled accordingly."

Accordingly, the trial court denied the owner's counterclaim, upheld the builder's lien on the owner's real estate and assessed damages against the owner in the sum of $34,500, plus pre-judgment interest from October 10, 1978 and $17,505.05 attorneys' fees.

At trial the owner argued the regulations regarding smoke and heat vents applied when a building is enlarged to exceed 50,000 square feet, and the annunciator regulations applied if the enlarged building were greater than 100,000 square feet. To support its counterclaim it presented evidence of the installation cost of the vents and annunciator for the 45,000 square foot addition. The builder, *inter alia*, argued that he only contracted to build a structure containing 45,000 square feet and thus was only obligated to comply with regulations pertaining to structures of 45,000 square feet. Additionally, the builder introduced parol evidence which attempted to establish that at a meeting of representatives of both parties prior to the execution of the agreement it was agreed that the "scope of the work" section of the contract would establish the outer limits regarding what the builder had to do under the contract.[2]

## DISCUSSION AND DECISION

The critical question in this case is whether or not the builder was bound under the contract to pay for the smoke and heat vents and annunciator panel required by the State Fire Marshal. We hold the builder was obligated to do so.[3]

"In deciding cases involving disputes over the meaning of written contracts, courts resort to the application of rules of construction and the receipt of extrinsic evidence only after their careful study of the entire contract itself has failed to make clear its meaning." *Evansville-Vanderburgh School Corp. v. Moll*, (1976) 264 Ind. 356, 362, 344 N.E.2d 831, 837. In the absence of ambiguity it is not within the function of the judiciary to look outside the instrument to arrive at the parties' intent. *Jenkins v. King*, (1946) 224 Ind. 164, 171, 65 N.E.2d 121, 123; *See Bellew v. Byers*, (1979) Ind., 396 N.E.2d 335, 337. In other words Indiana applies the so-called "four corners" rule in the construction of written instruments. *E.g., Hauck v. Second National Bank of Richmond*, (1972) 153 Ind. App. 245, 286 N.E.2d 852. This rule provides that in construing written instruments, the express language found within the four corners of the instrument, if unambiguous, determines the intent of the parties such that parol or extrinsic evidence is inadmissible to expand, vary or explain the instrument unless there has been a showing of fraud, mistake, ambiguity, illegality, duress or undue influence (defect in the formation of the contract). *Lippeatt v. Comet Coal & Clay Co., Inc.*, (1981) Ind.App., 419 N.E.2d 1332. While an ambiguous adhesion contract is construed in the non-drafting party's favor, an unambiguous contract must be enforced according to its terms. *Drake Ins. Co. v. Carroll Cty. Sheriff's Dept.*, (1981) Ind.App., 427 N.E.2d 1153; *Cincinnati Ins. Co. v. Mallon*, (1980) Ind. App., 409 N.E.2d 1100. A contract is ambiguous only where reasonable people could find its terms susceptible to more than one

2. We also observe the builder did not object to the trial court's admission into evidence of the letter by the Fire Marshal or a letter, written by the owner, which purported to summarize the UBC rule regarding smoke and heat vents, and also purported to quote the rule concerning annunciators. In this regard we note while courts cannot take judicial notice of municipal ordinances, *Carpenter v. Whitley Cty. Plan Comm'n.*, (1977) Ind.App., 367 N.E.2d 1156, courts are to take judicial notice of state agency regulations, Ind.Code 4-22-2-11.

3. Citing Ind.Rules of Procedure, Appellate Rule 8.2(B)(4), the builder argues the owner has

waived the issue for failure to reproduce the relevant provisions of the Uniform Building Code in its brief. We disagree. Both parties agree that at a minimum the regulations apply to buildings in excess of 50,000 square feet; however the builder contends the contract does not obligate the builder to pay for compliance with the regulations at all, and furthermore the regulations are inapplicable because the terms of the contract called for the builder to construct a structure of only 45,000 square feet. Thus the issue does not involve a determination of what the regulations provided but what the contract required.

interpretation. *Marksill Specialties, Inc. v. Barger*, (1981) Ind.App., 428 N.E.2d 65; *Piskorowski v. Shell Oil Co.*, (1980) Ind.App., 403 N.E.2d 838. Further, ambiguity is not established by the mere fact the parties assert different interpretations of the contract. *Marksill Specialties, Inc. v. Barger, supra; Equitable Life Assurance Society of U.S. v. Short*, (1975) 165 Ind.App. 338, 332 N.E.2d 273. Finally, whether an ambiguity exists must be determined by the application of the following principles:

1) Words used in a contract must be given their common meaning unless, from the entire contract and its subject-matter, it is clear that some other meaning was intended, and

2) Words, phrases, sentences and paragraphs of a contract are not to be read alone; the intention of the parties must be gathered from the entire contract.

*Marksill Specialties, Inc. v. Barger, supra; Piskorowski v. Shell Oil Co., supra.*

■ We find the contract in the present case is not ambiguous as the builder contends because the express language of the instrument taken as a whole shows the parties contemplated the cost of compliance with state administrative regulations and assigned this responsibility to the builder.

The instant agreement stated the "CONTRACTOR [builder] shall provide all required engineering, labor, supervision, materials, construction equipment, tools, facilities and supplies to: *design and construct* a building addition, equipment foundations and utility services" at the owner's plant in Kentland, Indiana. (Emphasis added.) We noted earlier other significant language in the agreement. It provided, generally, the builder "shall be responsible for all work which is implicit or accessory to this Scope of Work whether or not such work is expressly called for," and "[a]ll work shall be done in a good and workmanlike manner, to the satisfaction of OWNER, and *shall be in conformance with all current and applicable codes, rules, regulations, and standards.*" (Emphasis added.) Moreover, the "General Conditions" section of the contract expressly declared:

"PERMITS, REGULATIONS AND RECORDINGS

a. The Contractor [builder] shall give all notices, comply with all laws, ordinances, rules and regulations bearing on the Work. The Contractor agrees to indemnify and hold Owner harmless from any loss, liability or penalty which might be imposed by reason of asserted or established failure of the Contractor or its employees or agents and/or its subcontractors and/or their employees or agents to comply with any applicable laws, ordinances, rules or regulations."

Clearly the plain meaning of the contract called for the builder to "design and construct" the addition "in conformance with all current and applicable codes, rules, regulations and standards," and it placed responsibility on the builder for all work "implicit or accessory" to the project. We conclude, therefore, the contract is unambiguous on this issue and thus it would be erroneous to apply rules of construction or to consider extrinsic evidence as there were no allegations or evidence of a defect in the formation of the contract. *Evansville-Vanderburgh School Corp. v. Moll, supra; Jenkins v. King, supra.*

■ Additionally, the builder also argues the trial court correctly determined the builder did not have to comply with the building regulations because the regulations applied only to buildings in excess of 50,000 square feet whereas he had agreed to construct a structure of only 45,000 square feet. We disagree. The contract called for the addition to adjoin and expand the existing building, specifically requiring the builder to remove the west exterior wall of the existing building. The resulting single building exceeded 100,000 square feet. We conclude, therefore, the builder did not contract simply to build a 45,000 square foot structure but explicitly agreed to enlarge an existing building by 45,000 square feet. Consequently, the trial court erred in entering judgment for the builder on his complaint and not finding, on the owner's counterclaim, the builder liable for the cost of complying with the regulations.

In reaching our conclusion we draw support from *Superior Trailer Mfg. Corp. v. J. W. Scatterday, Inc.*, (1962) 243 Ind. 473, 185 N.E.2d 417 (opinion after remand);[4] and *Dollman v. Pauley*, (1931) 202 Ind. 387, 174 N.E. 729 (per Travis, J., Roll, J. concurring in result). In *Superior Trailer Mfg. Corp. v. J. W. Scatterday, Inc., supra*, a "qualified builder," Scatterday, agreed to design and construct a new building to adjoin an existing building in a "skillful, careful and workmanlike manner." Each building was to have an independent wall along the adjoining line, with the exception of a small section serving as a common wall, and the footings of the new wall were expected to provide needed underpinning for the original wall. In carrying out his design for the footings, Scatterday constructed them by cutting away to the sheer perpendicular lines of the wall of the original building to and including the digging of a trench to a depth approximately eight inches below the grade for a spur track. The exposed earth formed the interior wall of the footings, and wooden forms about two feet in height into which concrete was poured were constructed as an exterior wall for the footings. Initially this method of construction proved to be successful; however, after a weekend of rain two different sections of the wall of the existing building collapsed while Scatterday was waiting for cement to be delivered to fill the forms. In its findings of fact and conclusion of law the trial court found the contract "did not, in its written terms, require the plaintiff [owner] to underpin, to shore up or to do anything with regard to the . . . [e]ast walls of the [original] building." In reversing the trial court's judgment, our Supreme Court stated that this finding was not material because the contract obligated Scatterday to install "all footings as required and necessary." *Superior Trailer Mfg. Corp. v. J. W. Scatterday, Inc., supra*, 243 Ind. at 480, 185 N.E.2d at 421. The Supreme Court also noted the evidence showed a regulation of the Administrative Building Council of Indiana provided "[n]o excavation for any purpose shall extend within one foot of the angle or repose or natural slope of the soil under any footing or foundation, unless such footing or foundation is first properly underpinned or protected against settlement." *Id.* at 481, 185 N.E.2d at 421. Our Supreme Court concluded that based on the above finding of fact, the trial court "misconstrued the law governing the case by assuming that appellees' [Scatterday's] responsibility for underpinning the east wall of the building was contingent upon a written agreement which expressly so provided." *Id.* Similarly the trial court in the present case stated in its findings of fact and conclusions of law:

> "the contract expressly required that Forcum-Lannom 'provide and install an ordinary hazard wet sprinkler fire protection system in the building addition guaranteed to meet Factory Mutual approval.' Conversely, the contract omitted and failed to mention any obligation or requirement of the plaintiff to provide smoke and heat vents and an [an]nunciator. Since these latter items were not mentioned in the contract they necessarily must be excluded as an obligation of Forcum-Lannom under the doctrine of 'expressio unius est exclusio alterius.' [the expression of one thing is the exclusion of another.]"

Disregarding the contractual language concerning compliance with administrative regulations, the trial court misconstrued the law bearing on the issue by assuming the builder's responsibility for smoke and heat vents and an annunciator was contingent upon a provision expressly calling for such items.

In *Dollman v. Pauley, supra*, defendant Pauley undertook to erect a four-story building on his land adjacent to Dollman's land and building. Dollman alleged that as part of Pauley's project it was necessary to excavate alongside the foundation of Dollman's building; consequently the parties entered a contract where Pauley agreed to "underpin" and "do all things necessary to protect" Dollman's wall. Dollman also al-

4. The earlier opinion in *Superior* may be found at 241 Ind. 459, 169 N.E.2d 721.

leged the excavation made by Pauley was greater than ten feet, and during the course of the project Dollman's building settled, resulting in cracked and strained walls. At the time the contract was executed a city ordinance was in effect which specified "the legal depth for excavation to the bottom of footings" to be either seven or ten feet depending on the type of building involved. The contract was silent regarding the depth of the excavation or footings for the underpinning. On appeal Judge Travis stated:

"[i]t must be presumed, the contrary not being alleged, that the parties did not intend to contract in violation of law, but according to its provisions. The ordinance provides for 'the legal depth for excavations, etc.,' which fits the situation of these parties, also the objection of each party to the other. Here was a law which determined the depth of excavations for footings for walls, and which also determined the rights of the parties, and the obligation each owed to the other. These parties knew, as a matter of law, their obligations one to the other, as prescribed by the ordinance. The contract, as alleged, was made with the view of the provisions of this ordinance. No more precise language can be found to state the principle that statutes and the law as otherwise existing became a part of every contract, and must be read into it, than made by Chief Justice John Mar-

shall in the words, 'in every forum a contract is governed by the law with a view to which it was made.' *Wayman v. Southard* (1825) 10 Wheat. 1, 48, 6 L.Ed. 253."

*Dollman v. Pauley, supra* 202 Ind. at 393–94, 174 N.E. at 731.[5]

It is well settled in Indiana that generally, unless the contract provides otherwise, all applicable law in force at the time the agreement is made impliedly forms a part of the agreement without any statement to that effect, but laws enacted subsequent to the execution of the agreement are not deemed part of the agreement unless the contractual language clearly indicates such to have been the intention of the parties; the parties are presumed to have had the law in mind. *E.g., Mouch v. Indiana Rolling Mill Co.,* (1926) 93 Ind.App. 540, 151 N.E. 137 (existing statutes and settled law of the land at the time a contract is made become a part of it and must be read into it unless expressly excluded by the contractual language); *Evansville-Vanderburgh School Corp. v. Moll, supra* (parties to a contract may agree to be bound by subsequent legislation and to perform only after such legislation is in effect; they may also agree to perform according to statutes which will govern performance at the time it is undertaken); *see generally* 4 S. Williston, A Treatise on the Law of Contracts § 615 (3d ed. 1961 & Supp.1981).[6]

---

**5.** The *Dollman* opinion also specifically found a city ordinance within the ambit of the rule. *Accord, Lutz v. New Albany City Plan Comm'n,* (1951) 230 Ind. 74, 101 N.E.2d 187.

**6.** The Supplement to *Williston* notes an interesting case germane to our discussion here. *Denice v. Spotswood I. Quinby, Inc.,* (1968) 248 Md. 428, 237 A.2d 4. *Denice* involved an agreement to construct and sell a residence where the builder was obligated "to finish" a large recreation room in the basement of the house. When the carpenters were in the process of putting in the ceiling, the home buyer noticed the height of the room measured between six feet eight inches and six feet nine inches. The contract was silent as to the height of the finished room, although the plans showed a "rough basement" with the distance between the basement slab and the finished floor above being eight feet eight inches. The home buyer complained in writing to the build-

er about the height of the room, and called the builder's attention to the relevant section of the county building code which required the height of the room to be "not less than 7½ feet." The buyer refused to go to "settlement" until the problem was rectified, whereupon the builder considered the contract breached and the buyer's $10,000 deposit to be forfeited. The Maryland Court of Appeals held that compliance on the part of the builder with the county building code (adopted by ordinance) was an implied condition of the contract, and thus the builder's failure to comply with the building code, being substantial, excused the buyer's performance and entitled the buyer to a refund of the deposit. *Denice v. Spotswood I. Quinby, Inc., supra* at 438, 237 A.2d at 9. To arrive at its holding the *Denice* court relied on the traditional rule that, generally, applicable existing law at the time of a contract's execution becomes an implied term of the contract as if it were expressly so written. *Id.* at 433–34, 237 A.2d at 7.

Based upon the foregoing reasoning and authorities this Court could readily hold, in the absence of contractual language to the contrary and in a proper case, a builder to have impliedly agreed to comply with all applicable building codes and regulations when he agrees to "design and construct" a building or an addition. However, the instant case is an even more compelling one in which to hold, as we do, a designer-builder to be responsible for compliance with all applicable building regulations, where the express language of the agreement reveals the parties affirmatively made such an agreement.[7]

With respect to the scope of our holding and in response to the builder's assertion in his brief that the owner claims the builder is obligated under the contract to place the entire, 100,000 square foot building in compliance with the regulations, we note the owner proceeded both at trial and on appeal on the theory the compliance costs associated with the older, pre-addition building rest with the owner. Thus we are called upon to construe and our holding only reaches, the contract provisions as they apply to the addition. We find the contract unambiguously required the builder to construct the *addition* in compliance with applicable regulations and thus to pay for the proportionate compliance costs fairly allocable to the addition only.

Having held the builder was obligated under the contract to comply with the building regulations and thus the trial court erred in not finding such for the owner on his counterclaim, we now turn to the question of damages. In the memorandum accompanying his motion to correct error the owner requested a "new trial," and he has again raised the matter in his appellant's brief. Given our holding, we remand the case for a new trial on damages only at which the owner will be restricted to damages upon his theory presented at the original trial and on appeal—that is, the compliance costs allocable to the addition only. *Boss v. Deak*, (1936) 210 Ind. 449, 4 N.E.2d 180.

For purposes on remand, we also note that, generally, the measure of damages in a breach of contract case is the loss actually suffered as a result of the breach; consequently a plaintiff is not entitled to be placed in a better position than he would have been had the breach not occurred. *Crestwood Park, Inc. v. Apostal*, (1982) Ind., 431 N.E.2d 789; *Downing v. Dial*, (1981) Ind.App., 426 N.E.2d 416. Specifically in cases where a builder has breached a construction contract, the measure of damages is the reasonable cost of completion, or alternatively, the actual cost of completion. *Blade Corp. v. American Drywall, Inc.*, (1980) Ind.App., 400 N.E.2d 1183. Also, a party who suffers damage due to the refusal of the other party to perform under a contract has a right to recover his expenses if he completes the work at his own expense. *Ogle v. Wright*, (1977) 172 Ind.App. 309, 360 N.E.2d 240, (cost of completing installation of a septic tank).[8] An explanatory example of these principles is found in illustration 12 of Restatement (Second) of Contracts § 347 comment e (1981) which states:

> "12. A contracts to build a house for B for $100,000, but repudiates the con-

7. We note our conclusion is not inconsistent with this Court's suggestion in *Drost v. Professional Building Service Corp.*, (1972) 153 Ind. App. 273, 286 N.E.2d 846 that the failure to obtain a building permit is not a valid defense in a suit to foreclose a mechanic's lien. The rationale behind the cases cited in *Drost* is where the failure to obtain the permit is an oversight and there is no evidence the building, in fact, is not in compliance with the provisions of the building code, then the failure to obtain the permit is insufficient to declare the contract illegal. *Meissner v. Caravello*, (1954) 4 Ill. App.2d 428, 124 N.E.2d 615; *Amoco Oil Co. v. Toppert*, (1978) 56 Ill.App.3d 595, 14 Ill.Dec. 241, 371 N.E.2d 1294; and Annot., 26 A.L.R.3d 1395 (1969). We also note the issue here is not whether the contract was illegal, but a determination of what the contract terms required.

8. There was evidence the owner incurred engineering costs in connection with the cost of installing the annunciator and smoke and heat vents.

tract after doing part of the work and having been paid $40,000. Other builders would charge B $80,000 to finish the house, but B finds a builder in need of work who does it for $70,000. B's damages are limited to the $70,000 that he actually had to pay to finish the work less the $60,000 cost avoided or $10,000, together with damages for any loss caused by the delay."

Reversed and remanded for a new trial consistent with this opinion.

CONOVER and YOUNG, JJ., concur.